**Gary Lee ZIMMERMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–87–154–CR.**

Court of Appeals of Texas,
Corpus Christi.

June 30, 1988.

Discretionary Review Refused
Oct. 19, 1988.

James R. Lawrence, Corpus Christi, for appellant.

Grant Jones, Corpus Christi, for appellee.

Before NYE, C.J., and DORSEY and SEERDEN, JJ.

## OPINION

DORSEY, Justice.

A jury found appellant, Gary Lee Zimmerman, guilty of burglary of a habitation and assessed punishment at life imprisonment plus a $1,000.00 fine. Appellant presents four points of error on appeal. We affirm.

The indictment charges that on March 5, 1986, appellant entered the home of Tawna Sasser without her consent with the intent to commit theft. Paragraph two states the accused was previously convicted of one felony, namely burglary of a habitation, on November 1, 1982. Appellant pled "not guilty" to the charged offense and "not true" to the enhancement paragraph. He was tried on April 6, 1987.

At trial, Sasser testified that after her husband left for work on the morning in question, appellant appeared in her bedroom. Sasser was eight months pregnant at the time. Appellant immediately struck

her in the face, causing her to fall on to her bed. He then blindfolded her with a sock, covered her head with a blanket, and tied her hands together. As he walked around the house, he told Sasser that he "didn't care about [her] or [her] child." Appellant re-tied Sasser's hands to the headboard and put a sock in her mouth to prevent her from screaming. After leaving the room momentarily, he returned to the bed, held a knife to Sasser's throat, and asked her if she could feel it. Appellant tied another sock around her head and then left the house. Sasser testified that some money, beer, a hat, and her car were stolen.

Sasser's husband testified that he spotted appellant driving his wife's car down the highway on the morning of the burglary. He radioed the authorities, followed the car, and was present at the scene when appellant was arrested near Pleasanton, Texas.

After the State rested, the defense closed without presenting any evidence.

Appellant asserts in his third point of error that the trial court erred in overruling his Special Plea in Bar based on collateral estoppel.

On December 1, 1986, appellant pled not guilty to a charge of aggravated sexual assault on Tawna Sasser which offense allegedly occurred contemporaneously with the burglary in question. A jury acquitted appellant of aggravated sexual assault. Appellant argues that because the jury did not believe he committed a sexual assault, it must not have believed he ever entered the complainant's home; therefore, the issue of entry should not have been relitigated.

■ Since the acquittal in the former prosecution was based on a general verdict, in order to address appellant's collateral estoppel claim we must examine the record of the prior proceeding to determine whether a rational jury could have based its verdict on an issue *other* than the one which appellant was attempting to remove from consideration. If the former verdict must have been based on the issue in question, it cannot be relitigated. *Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); *see also Ex Parte Augusta*, 639 S.W.2d 481, 485 (Tex. Crim.App.1982).

■ In the former prosecution, the State attempted to prove that after appellant invaded Sasser's home, he not only stole her property but also sexually assaulted her by causing his sexual organ to penetrate hers. In addition to the complainant, the State called to the stand Dr. Ted Williams, who testified that he examined Sasser several hours after the alleged rape. Defense counsel's cross-examination revealed that Williams found no physical evidence of a sexual assault or penetration other than the complainant's "behavior and demeanor." We conclude the acquittal could have been based on an issue other than entry, e.g., that there had been no sexual contact between appellant and Sasser. Hence, the issue of whether appellant entered Sasser's home was properly relitigated. *See Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194.

Collateral estoppel does not bar the instant prosecution. We overrule appellant's third point of error.

■ Point one states the trial court erred in admitting into evidence a two-page parole certificate which, appellant contends, had the effect of conveying to the jury how the parole law is applied.

The certificate, which was part of State's Exhibit Number 48 (SX–48),[1] indicates that appellant was released on parole from the Texas Department of Corrections on February 28, 1986, after serving time for a prior offense. While the certificate does not provide the date on which appellant began his sentence, another document in SX–48 shows a picture of appellant with the words "Rec'd 5–11–83."

During a hearing prior to the punishment phase of trial, appellant's counsel informed the court that the parole certificate in SX–48 was "somewhat inflammatory," and should be deleted from the exhibit. After

---

1. SX–48 is a "pen packet" containing the judgments of conviction in three felony offenses, a T.D.C. identification sheet, a fingerprint chart, and the two-page parole certificate.

a lengthy discussion, the trial court overruled appellant's objection. Appellant renewed his objection to SX–48 during the trial on punishment, and the court again overruled it.

Citing as authority *Clark v. State*, 643 S.W.2d 723 (Tex.Crim.App.1982), appellant urges that the introduction of the parole certificate was error because it informed the jury about the workings of the parole law. Appellant's reliance on *Clark* is misfounded. In that case, a pen packet similar to SX–48 was admitted into evidence. It contained records which revealed that the defendant had received a 20–year sentence for a prior conviction and was released on parole after serving three years. During final argument on punishment, the prosecutor directed the jury's attention to these records, informed the jury that the defendant had been paroled seventeen years early, and argued that a lengthy sentence would now be necessary to rehabilitate the defendant. The Court of Criminal Appeals held that the prosecutor's *argument* constituted reversible error because it "invited the jury to look at records of prior offenses to see how long it would take for a defendant to be released." *Id.* at 725. The Court did *not* hold that the parole information itself was inadmissible during the trial on punishment.

Nor do we find such to be the case here. Rather, the introduction of SX–48 was authorized by Tex.Code Crim.Proc.Ann. art. 37.07, § 3(a) (Vernon Supp.1988), which states in pertinent part:

Sec. 3 Evidence of prior criminal record in all criminal cases after a finding of guilty.

(a) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior or to trial, or any final conviction material to the offense charged.

As the trial court did not err in overruling appellant's objection to SX–48, we overrule point of error one.

Appellant's second point of error states the evidence was insufficient to support the jury's affirmative finding that appellant used a deadly weapon during the commission of the burglary offense. The finding was submitted in response to a special verdict form included in the punishment charge.

In reviewing the sufficiency of the evidence, an appellate court looks at all the evidence in the light most favorable to the verdict or judgment and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State*, 663 S.W.2d 455 (Tex.Crim.App.1984).

"Deadly weapon" is defined in Tex.Penal Code Ann. § 1.07(a)(11) (Vernon 1974) as:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

It has been held that a knife is not a deadly weapon *per se* and therefore does not meet the requirements of subsection (A) above. *Blain v. State*, 647 S.W.2d 293, 294 (Tex.Crim.App.1983). The *Blain* court further stated:

The State can, without expert testimony, prove a particular knife to be a deadly weapon by showing its size, shape and sharpness, the manner of its use or intended use and its capacity to produce death or serious bodily injury. In determining the deadliness of a weapon the jury may consider all of the facts of a case, including words spoken by the accused. (citations omitted).

*Id.*

In *Williams v. State*, 732 S.W.2d 777 (Tex.App.—Corpus Christi 1987, no pet.), the victim was awakened by a man who grabbed her face, put a knife to her side,

and told her not to move or scream or else he would kill her. She testified that the knife felt sharp and that she was in fear of serious injury or death. A police officer identified the weapon as a "butter knife" approximately nine inches long, with a four-inch blade, two-inch seration, and rounded tip.

This Court held the evidence sufficient to establish the use of a deadly weapon because: 1) the assailant caused the knife to contact the victim's body; 2) the assailant's threats and gestures caused the victim to fear death; and 3) the jury was given the opportunity to see the knife. *Id.* at 779–80.

■ In the instant case, appellant caused the blade of the knife to make contact with Sasser's throat. He asked her if she could feel it, and commented that he did not care about her or her child. Sasser testified that the knife felt sharp and that she was afraid appellant would kill her. The knife was admitted into evidence for the jury to inspect. We have also examined the weapon and determined that it is an 11–inch kitchen carving knife with a 6½–inch sharpened blade and pointed tip. The evidence is sufficient to support the jury's "deadly weapon" finding. Point two is overruled.

■ Appellant argues by his fourth point of error that the trial court erred in overruling his objection to the parole law charge given to the jury pursuant to Tex. Code Crim.Proc.Ann. art. 37.07, § 4(a) (Vernon Supp.1988).

The Court of Criminal Appeals recently held that article 37.07, § 4(a) and any instruction given pursuant to that statute is unconstitutional. *Rose v. State,* 752 S.W. 2d 529 (Tex.Crim.App.1988) (opinion on reh'g). But the court noted that although it is error to give the instruction, the error is not automatically reversible and must be analyzed under Tex.R.App.P. 81(b)(2). *Id.,* at 553. Thus, appellant's conviction must be reversed unless we determine "beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." *Id.* Our focus is on whether the parole and good time charge could have made a contribution to the punishment received by appellant, life imprisonment. We find the following factors to be significant in our analysis of this issue.

First, appellant had eight prior felony convictions: two for burglary of a habitation, two for theft, two for escape, one for forgery, and one for unauthorized use of a vehicle.

Second, the instant burglary involved not only entry and theft, but also an assault with a deadly weapon. Appellant placed Sasser in desperate fear for her own life as well as for her unborn child's life. He terrorized Sasser by blindfolding her, tying her hands to a bed, and threatening to kill her with a knife.

Third, the appellant presented no evidence during either the guilt/innocence or punishment phase of trial; the defense made no attempt to explain the crime or to bolster appellant's character or reputation in the community.

Fourth, during final argument on punishment, the prosecutor told the jury that, while it had been instructed on the "basic laws of parole," it was "not to try to predict when this Defendant would be released."

Although appellant received the maximum sentence of life imprisonment,[2] we conclude beyond a reasonable doubt that, in light of the foregoing factors, the parole law instruction did not contribute to the jury's assessment of this sentence. Tex.R. App.P. 81(b)(2). Consequently, we overrule point of error four.

The judgment of the trial court is AFFIRMED.

─────────────

2. Tex.Penal Code Ann. § 12.32 (Vernon Supp.    1988).