**Jerry B. WOODS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–86–00373–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 15, 1988.

Kenneth W. Sparks, Schaffer, Lambright, Odom & Sparks, Houston, for appellant.

John B. Holmes, Dist. Atty., Harris County, for appellee.

Before JACK SMITH, SAM BASS and DUNN, JJ.

OPINION ON REMAND

JACK SMITH, Justice.

A jury found appellant guilty of delivery of cocaine by "constructive transfer," and assessed punishment at 75 years confinement. In his appeal, appellant asserted that the parole charge given to the jury pursuant to Tex.Code Crim.P. art. 37.07, sec. 4 (Vernon Supp.1987), violated the separation of powers doctrine and is vague, misleading, and inconsistent. Upholding the constitutionality of the statute, this Court overruled the points of error. The Texas Court of Criminal Appeals has vacated the judgment of this Court and remanded the cause so that the two points concerning the parole charge may be reconsidered in light of its holding in *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1988). In all other respects the Court upheld the rulings in our original opinion. *Woods v. State*, 758 S.W.2d 285 (Tex.Crim.App.1988).

In *Rose*, the Texas Court of Criminal Appeals held that article 37.07, sec. 4 violated the separation of powers and the due course of law provisions of the Texas Constitution. *Rose*, 752 S.W.2d at 552. On its own motion for rehearing, the court then held that when a parole charge has been given, the rule 81(b)(2) test must be applied to determine whether appellant was harmed. *Rose*, 752 S.W.2d at 553; Tex.R. App.P. 81(b)(2). That rule provides that:

[i]f the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the

judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

In making its assessment of harm in *Rose,* the court pointed to a curative charge given to the jury, the egregious facts of the case, and the defendant's criminal record in finding that the error made no contribution to the punishment assessed. *Rose,* 752 S.W.2d at 554–555. The jury convicted Rose of aggravated robbery and assessed the maximum sentence of life imprisonment.

In the case at hand, after giving the statutory parole charge, the trial court gave a curative charge almost identical to that in *Rose:*

> You are not to discuss among yourselves how long the defendant would be required to serve the sentence that you impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of Texas, and must not be considered by you.

*Compare Rose,* 752 S.W.2d at 554. As noted in *Rose,* we generally presume that a jury follows the instructions given by the trial court. *Cobarrubio v. State,* 675 S.W.2d 749, 752 (Tex.Crim.App.1983). Appellant has not presented any evidence for consideration by this Court that rebuts this presumption.

Next we look to the facts of the case. The record reflects that Reeves, who was an undercover officer, and her partner were involved in an undercover narcotics operation and were investigating narcotics dealing at apartment 22 in the 6000 block of Schroeder. As Reeves approached the apartment, appellant whistled at her and asked what she needed. Reeves replied "a 50," that is a $50 "rock" of cocaine. Appellant asked her for the money and said that "he could get it." He also informed Reeves that she could not go to apartment 22 because "they were cutting dope and they wouldn't let anyone in at that time." Reeves told appellant she would return in 15 minutes. Appellant again requested the money because "he didn't have a 50, they only had quarters," but he could get "a 50" for her.

When Reeves returned, she was again approached by appellant, and he asked whether she returned for "the 50." Reeves said "yes" and asked whether the people in the apartment were finished cutting the dope. Appellant then went upstairs to check. He went inside the apartment and said something that Reeves could not hear, and then told Reeves to go inside. Reeves and appellant went into the apartment. A man, identified as Jackson, was behind the door, and a man, identified as Stevenson, was behind the kitchen counter.

Stevenson asked Reeves if she had come for the "50." Reeves said "yes" and tried to give Stevenson the money, but he told her to give it to Jackson. Jackson gave her the "rock" when she gave him the money. Reeves then left, but returned shortly with uniformed officers and arrested appellant, Jackson, and Stevenson.

The indictment charged appellant with delivery of less than 28 grams of cocaine and included two enhancement paragraphs. Under the Controlled Substances Act (before enhancement), the applicable punishment range is confinement for life or for a term of not more than 99 years or less than 5 years. The convicted may also be assessed a fine not to exceed $20,000. Tex. Rev.Civ.Stat.Ann. art 4476–15, sec. 4.01(b)(1) and sec. 4.03 (Vernon Supp.1988). Appellant pleaded true to allegations of two previous felony convictions for burglary of an automobile with the intent to commit theft and for credit card abuse. In accordance with section 12.42(d) of the Texas Penal Code, the jury was instructed that it should assess punishment at confinement for life or for any term of not more than 99 years or less than 25 years. Tex.Penal Code Ann. sec. 12.42(d) (Vernon Supp.1989). The jury assessed punishment at confinement for 75 years.

While the facts of this case show appellant's participation from the inception to the completion of the transaction as well as his prior criminal record, the facts do not have the egregious nature of those in the

*Rose* case. Some cases following *Rose* have also involved fact situations more compelling than those present here, and no harm was found as a result of the parole charge having been given.

In *Zimmerman v. State*, 754 S.W.2d 402 (Tex.App.—Corpus Christi 1988, pet. ref'd), the defendant was convicted of burglary of a habitation and received life imprisonment. The defendant had eight prior felony convictions; the burglary also involved theft and assault with a deadly weapon; and the victim was placed in fear for her life. *Zimmerman*, 754 S.W.2d at 405.

In *Lancaster v. State*, 754 S.W.2d 493 (Tex.App.—Dallas 1988, pet. pending), the jury convicted the defendant of aggravated robbery and sentenced him to life imprisonment. The complaining witness identified the defendant as the man who robbed him by pointing the gun at the witness' forehead and threatening to "splatter" his brains against the wall. In addition, the defendant had numerous prior convictions. *Lancaster*, 754 S.W.2d at 496.

In *Hastings v. State*, 755 S.W.2d 183 (Tex.App.—San Antonio 1988, pet. pending), the defendant was convicted of aggravated assault and sentenced to 20 years confinement. That case also involved a series of violent acts and prior convictions. *Hastings*, 755 S.W.2d at 184–185.

The facts of this case do not rise to the same level of any of the above cited cases applying the standard set forth in *Rose.*

The most troubling aspect of this case lies in the arguments made by the prosecutor that invite the jury to calculate and consider the amount of time that would actually be served by the appellant. In his opening remarks at punishment phase, the prosecutor discussed parole as follows:

Then you will see March 19th, 1983, he was again caught and convicted of the felony of credit card abuse.

And you will note that the date March the 19th, 1983, one year and one month— two years and one month apparently after the date of his conviction, his five years' conviction, he was convicted of this offense alleged here. What does that tell you about this man? It tells

you that you have a hard decision that you have to make. I will be speaking a little bit more about this man and the decision you have to make in a few minutes. There's a couple of more things on the second page of the charge you will see and instructions concerning parole right there at the middle. I have highlighted it on my copy on the first page. If you don't go ahead and read that paragraph real carefully you kind of think someone is eligible for parole after he has served his sentence. The law limits very carefully in what I can say in terms of this. Please read this paragraph. *You will see for instance if you sentence this defendant to 45 years in the Texas Department of Corrections, that means he will be eligible for parole when his actual time and good time equal 15 years. It doesn't mean he has to serve 15. Please consider that when you go back there, and talk about it among yourselves, or it doesn't say he has to serve a third.*

*I would also remind you at this time before [defense counsel] speaks to you that the law of pardons and paroles applies to life sentences in the State of Texas. There is no such thing as life without parole. Please consider that.* (Emphasis added.)

In his concluding remarks, the prosecutor focused on appellant's prior convictions and the seriousness of drug dealing and its effects on society. The prosecutor asked the jury to assess punishment at life imprisonment.

Even though parole was not mentioned again, the following combination of factors: (1) that the sentence assessed was at the upper end of the range of punishment, (2) that there is a noted absence of the type of egregious facts such as were found in *Rose*, and (3) that the argument by the prosecutor invited consideration of parole by the jury and emphasized that appellant might not serve even one-third of his sentence, precludes us from saying beyond a reasonable doubt that the erroneous charge made no contribution to the punishment.

Appellant's third point of error is sustained.

The judgment of the trial court is affirmed as to the conviction. The judgment of the trial court is reversed for a new trial on the issue of punishment. Tex.Code Crim.P. art. 44.29(b) (Vernon Supp.1989).