Billy Joe HUNT, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–88–265–CR.

Court of Appeals of Texas,
Corpus Christi.

Jan. 12, 1989.

James D. Granberry, Corpus Christi, for appellant.

Thomas L. Bridges, Sinton, for appellee.

Before NYE, C.J., and DORSEY and KENNEDY, JJ.

OPINION

DORSEY, Justice.

The issue is whether a prosecution for aggravated sexual assault has been forestalled by application of the doctrine of collateral estoppel arising from the appellant's acquittal of sexual assault of same alleged victim.

Appellant, Billy Joe Hunt, was indicted in Cause No. 7110–1 for sexually assaulting the victim, C.A.M.S., "on or about December 18, 1987." He was also charged in a separate indictment in Cause No. 7109–1 for the aggravated sexual assault of the same victim, such offense allegedly occurring on December 28, 1985, when the victim was under age 14. Appellant was subsequently tried before a jury and acquitted on Cause No. 7110–1. Upon receiving no-

tice of setting in Cause No. 7109–1, he filed an application for writ of habeas corpus seeking to set aside the prosecution on the basis of collateral estoppel. The trial court denied relief after conducting a hearing. Appellant now complains of the court's ruling by two points of error. We affirm.

The indictment in Cause No. 7110–1, of which appellant was acquitted, charges appellant with penetrating the anus of C.A. M.S., a child younger than 17, on or about December 18, 1987. The indictment for which he is to stand trial in Cause No. 7109–1 accuses him of inserting an artificial penis in the sexual organ of C.A.M.S. on or about December 28, 1985, at which time the victim was younger than 14 years of age.

Point one asserts the trial court erred in denying the relief sought under appellant's writ of habeas corpus because the State, in Cause No. 7109–1, is collaterally estopped from relitigating the issue of whether any sexual activity has ever occurred between the appellant and the victim.

 Collateral estoppel, as embodied in the Fifth Amendment guarantee against double jeopardy, means that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); *Dedrick v. State*, 623 S.W.2d 332, 336 (Tex.Crim.App. 1981). The doctrine requires the reviewing court to examine the record of the prior proceeding to determine whether a rational jury could have based its general verdict upon an issue other than that which the defendant seeks to foreclose from consideration. If the former verdict must have been based on the issue in question, it cannot be relitigated. *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194; *Zimmerman v. State*, 754 S.W.2d 402, 403 (Tex.App.—Corpus Christi 1988, pet. ref'd).

At issue then is what facts the verdict of acquittal was based upon. Appellant urges that the jury determined that no sexual contact occurred between Hunt and the alleged victim at any time. The State ar-

gues that the factual issue that was resolved is much narrower: that the assault with the specifics of time, place and manner as alleged in the indictment did not occur.

It is necessary to examine in some detail the evidence and arguments to determine what was in issue before the jury.

Complainant, C.A.M.S., a girl 15 years of age at the time of trial, born January 4, 1973, testified directly and positively that Billy Joe Hunt had anal intercourse with her "[A]t the Gulf Skies Motel, room number four, December, between the 17th and 18th," of 1987. Her mother, Shirley Kay Burney, was present when the assault occurred. The defendant, Hunt, first placed an artificial penis in her rectum before inserting his own. C.A.M.S. testified that Hunt had intercourse with her, both "regular and anal" many times before over the previous four or five years. She estimated the number of times that Hunt had sexual intercourse with her was "probably about a hundred." When they first started, it was "just intercourse" and then progressed to anal intercourse. She testified that she complained to him about the pain, but felt she could not leave or ask her mother for help because Hunt would stop her and hit her and her mother. He had hit them in the past.

She did not remember a specific incident around November of 1985, although she gave a statement to the police concerning that incident and reviewed the statement on the witness stand. After she reviewed her statement, the State's attorney asked if she remembered Hunt doing anything to her at that time. She responded, "No." The witness stated that Hunt told her he was going to make her a prostitute for his friends, and she would get jewelry, money, and clothes, but that Hunt had never given her rewards for having sexual intercourse with him. She stated she hated him, but still cares for her mother because he "made my mother do all those things."

On cross-examination C.A.M.S. stated that Hunt had lived with her, her mother, and brother for seven years—since 1981; that at the time Hunt moved in, they were

living with a Mr. Carter, who was married to her mother, Shirley Kay Burney. She stated again that she had sexual intercourse with Hunt over 100 times and that she had told the police that during one day she had sexual intercourse with him six times.

As to the event in question, the witness was unsure whether it happened on December 17, or 18; she stated it happened around then, but could have been the 16th, 19th, or 20th, around 8:30 to 9:00 p.m. She did not know what they had done earlier that day or whether it was a weekend night or not. She admitted that she had been diagnosed as having gonorrhea at some point. She denied having sex with anyone other than Hunt, "besides my brother and my mother." She later admitted having sex with Elmer Hauns, with whom she, her mother, and brother were living for awhile and that Mr. Hauns was convicted for sexual contact with her, and she testified at his trial.

The next witness of the State was Shirley Kay Burney, the co-indictee of Hunt, who had pled guilty to both indictments and received a probated sentence as part of a plea bargain agreement that she testify against Hunt. Burney testified directly and unequivocally that Hunt had sexual intercourse with her daughter on or about December 17 or 18, 1984, in room number four, at the Gulf Skies Motel, Aransas Pass, Texas. She was there with her daughter and Hunt. Hunt had C.A.M.S. on her knees and inserted his penis in her. It happened at night and could have been between 9:00 and 11:00 p.m. She was unsure whether it was the 17th or 18th, whether it was a school night or weekend, what they had done the earlier part of the day, or if anyone else had been around earlier that night.

On cross-examination Ms. Burney was questioned about her past. Her mother died when she was young and her father abandoned her. She was adopted by an aunt and uncle, and the uncle repeatedly raped her when she was 15 years old. She was sent to a girl's home in Louisiana and later to one in Waco. She was committed to the Austin State Hospital, where at age 16 she met and married her first husband, who was also a patient. She later had him committed and divorced him. Her two children, the complainant and a son, have been taken from her twice for abuse. She married several other times and lived with other men prior to and after meeting Hunt. She thinks she is still married to her last husband, Carter, who was convicted for setting Hunt afire.

She admitted that her daughter sometimes "stretches the truth" and that Hunt required both children to go to school, do chores, and dress neatly. She knew that her daughter had been diagnosed as having gonorrhea, and she had the daughter on birth control pills.

She and Hunt had an "off again—on again" relationship that lasted for years, with her leaving him and living with, sometimes marrying, other men.

Although we do not have appellant's testimony as part of this record, the parties have stipulated that he denied ever having sexual contact with the complainant.

Two witnesses called by the defense, whose testimony is part of this record, testified that appellant was with them on the nights of the 17th and 18th of December. Dee Watson stated she played dominoes with the appellant and Shirley Kay Burney, while the complainant was present, until around midnight at her house in Corpus Christi on the night of December 17. Milton Krouser testified that he played Pinochle with the appellant at D.J.'s Bait Stand in Corpus Christi on Friday, December 18, between 9:00 or 10:00 and 3:00 a.m. of the 19th. Krouser stated that Shirley Kay Burney was there, although he was not sure as to the complainant's presence.

In their arguments both sides stressed the matter of credibility of the witnesses— the State of the complainant and her mother, who testified clearly and directly that appellant had intercourse with the girl, and Dr. Mobley, who stated that physical examination of the complainant verified both vaginal and anal intercourse had occurred. The defense stressed appellant's denial, the number of witnesses who testified as to his

character, the vagueness of the complainant and her mother as to other events on the day of the assault, and the witnesses who placed Hunt and Burney at locations other than the Gulf Skies Motel on the evenings of December 17 and 18.

In his first point of error, appellant argues that the jury, by its acquittal, has determined that no sexual contact occurred at any time between him and the complainant.

The doctrine of collateral estoppel bars a subsequent determination of the same facts that have already been found. The difficulty is determining what facts the jury has found by its general verdict of acquittal. Only when a jury could not have rationally based its decision on an issue other than the one sought to have been foreclosed is that issue barred from further inquiry. *Dedrick v. State,* 623 S.W.2d 332 (Tex.Crim.App.1981).

The testimony was direct and unequivocal by the complainant and her mother that a sexual assault occurred by the appellant approximately December 17 or 18 at the Gulf Skies Motel. By its verdict of acquittal, the jury rejected that testimony. Does it follow that the jury necessarily found there was no sexual contact between the parties any time, any place, as testified to by the appellant? We think not—the verdict may be viewed more narrowly. There is a possibility that the jury founded its verdict on a finding that there never was sexual contact between them; however, the finding of not guilty is not necessarily based on the defendant's testimony of "none—ever." The jury could have found that the State's witnesses' uncertainty about the events and dates surrounding the happenings in Room No. 4 of the Gulf Skies Motel, along with the direct and conflicting testimony of Mrs. Watson and Mr. Krouser as to the whereabouts of Hunt, the complainant, and Burney on the dates and times of the alleged assault, created enough uncertainty about the charged crime to justify an acquittal.

In *Dedrick* collateral estoppel prevented the State from presenting evidence of an event, i.e., the taking of a pistol from the appellant during the course of an attempted armed robbery. In *Ashe v. Swenson,* the finding that the defendant did not rob one player at a poker game barred his prosecution for the robbery of another player at the same game.

■ In contrast, appellant does not seek to bar evidence of a particular happening that has been adjudicated, but rather seeks to extend the doctrine to reject all testimony of any assault by the appellant against the complainant because one jury has not found her credible in the past. We decline to so extend the doctrine. Point of error one is overruled.

In his second point of error, appellant maintains that an acquittal of sexual assault alleged to have occurred in 1987 bars the prosecution of sexual assault between the same parties alleged to have occurred in 1985. Appellant argues that the complainant testified to about a hundred assaults by the appellant over a period of four or five years, including 1985, which could have supported a conviction had it occurred. He argues that, as Hunt was acquitted, the jury must have necessarily found that these other, earlier sexual assaults did not occur either.

■ When a crime is alleged to have occurred "on or about" a certain day, proof that the crime occurred on any date before the return of the indictment but within the statute of limitations is sufficient to support a conviction. *Ex Parte Alexander,* 685 S.W.2d 57, 59 (Tex.Crim.App.1985); Tex.Code Crim.Proc.Ann. art. 21.21(6) (Vernon 1966). We will therefore examine the indictment and the evidence to determine if evidence of the prior sexual assaults would have supported a finding of guilt; for by its acquittal, the jury found that those assaults did not occur.

However, the indictments differ significantly. The indictment of which Hunt was acquitted charged him with penetrating the complainant's anus with his penis. The one for which trial is pending charges him with penetrating the complainant's sexual organ with an artificial device. Proof of the second offense at the first trial would not

have supported a finding of guilt. The jury's verdict of acquittal did not reach the question appellant argues is precluded. Appellant's second point of error is overruled.

The judgment of the trial court is AF-FIRMED.