Motion for Rehearing Granted; Affirmed; Memorandum Opinion of August 31,
2006 Withdrawn and Majority and Dissenting Opinions on Rehearing filed
September 27, 2007








Motion for
Rehearing Granted; Affirmed; Memorandum Opinion of August 31, 2006 Withdrawn
and Majority and Dissenting Opinions on Rehearing filed September 27, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00227-CR

____________

 

ALEJANDRO V. SANTACRUZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 208th
District Court

Harris County, Texas

Trial Court Cause No. 987,489

 



 

M A J O R I T Y   O P I N I O N   O N   R E H E A R I N G

The State=s motion for rehearing is granted.  The
court=s unanimous
memorandum opinion issued on August 31, 2006 is withdrawn, and this Majority
Opinion on Rehearing is issued in its place.  








Appellant challenges his conviction for aggravated assault,
asserting in multiple issues  that the evidence is legally and factually
insufficient to support the conviction and that the trial court erred in admitting evidence in violation
of the Confrontation Clause.  We conclude that the evidence is legally and
factually sufficient and that appellant failed to preserve error as to his
first Confrontation Clause issue.  As to appellant=s second Confrontation Clause issue,
we conclude that statements made in and recorded during a 9-1-1 call were
nontestimonial and therefore the trial court=s admission of the audiotape of the
call did not offend the Confrontation Clause. 

I. Factual And Procedural Background

Around
10:30 p.m. on May 4, 2004, the complainant Nelly Canales called 9-1-1 and
requested that an ambulance and police be sent to her location.  When asked why
an ambulance was needed, Canales stated that her husband had hit her in the
mouth.  When asked if she had been sexually assaulted, she stated that her
husband had hit her with his rifle.  Canales later stated that this incident had
occurred at her house about ten to fifteen minutes earlier and that she had
taken her children to her mother=s house, and had
placed the 9-1-1 call from there.  Officer Ferguson, the responding officer,
arrived within minutes after the 9-1-1 call and found Canales in an ambulance. 
Officer Ferguson noted that Canales had obvious trauma to her mouth, injuries
to her face, and she was extremely upset, crying, and shaking.  Officer
Ferguson recounted that Canales told him she had been assaulted by her husband,
and named appellant as her husband.  Canales told Officer Ferguson that her
four-year-old daughter had let her husband and brother-in-law into the house. 
Canales further informed Officer Ferguson that she and appellant had recently
separated, and he was very upset.  Canales explained that, after entering the
house, appellant struck her repeatedly in the face. Canales stated she was
afraid that appellant was going to come back and assault her again.  The
exchange between Canales and Officer Ferguson lasted approximately fifteen
minutes.  The day after the incident officer Michael Rone interviewed Canales
at the police station.  Officer Rone stated that Canales=s injuries were
consistent with having been struck with a blunt object.  








Appellant was later apprehended, and charged by indictment
with the offense of aggravated assault.  The indictment alleged that appellant
used a deadly weapon, specifically a rifle, in the course of committing an
assault.  Appellant pleaded Anot guilty.@ The jury found
him guilty as charged, and the trial court sentenced appellant to two years= confinement in
the Institutional Division of the Texas Department of Criminal Justice. 

II.  Issues
Presented

Appellant presents the following three
issues for our review:

(1)     The trial court erred in
admitting the hearsay statements of Canales, through the testimony of Officer
Ferguson, in violation of the Confrontation Clause of the Sixth Amendment of
the United States Constitution (herein AConfrontation Clause@) and in violation of the Texas Constitution. 

(2)     The trial court erred in admitting the
audiotape of the 9-1-1 call in violation of the Confrontation Clause and in
violation of the Texas Constitution. 

(3)     The
evidence is legally and factually insufficient to support appellant=s conviction for
aggravated assault. 

IV. Analysis 

A.        Is the evidence legally and factually
sufficient to support appellant=s conviction for aggravated assault? 

In his
third issue, appellant asserts the evidence is legally and factually
insufficient to support his conviction for aggravated assault. A person commits
assault if he intentionally, knowingly, or recklessly causes bodily injury to
another.  Tex. Penal Code Ann. ' 22.01 (Vernon Supp. 2006).  The
offense becomes aggravated assault if the person committing assault uses
a deadly weapon during the commission of the assault.  Tex. Penal Code Ann. ' 22.02.  








In
evaluating a legal‑sufficiency challenge, we view the evidence in the
light most favorable to the verdict.  Wesbrook v. State, 29 S.W.3d 103,
111 (Tex. Crim. App. 2000).  The issue on appeal is not whether we, as a court,
believe the State=s evidence or believe that appellant=s evidence outweighs the State=s evidence.  Wicker v. State,
667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned
unless it is irrational or unsupported by proof beyond a reasonable doubt.  Matson
v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  The jury, as the
trier of fact, Ais the sole judge of the credibility of the witnesses and of
the strength of the evidence.@  Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim.
App. 1999).  The jury may choose to believe or disbelieve any portion of the
witnesses= testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App.
1986).  When faced with conflicting evidence, we presume the trier of fact
resolved conflicts in favor of the prevailing party.  Turro v. State,
867 S.W.2d 43, 47 (Tex. Crim. App. 1993).  Therefore, if any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt, we must affirm.  McDuff v. State, 939 S.W.2d 607, 614 (Tex. Crim.
App. 1997).








In
contrast, when evaluating a challenge to the factual sufficiency of the
evidence, we view all the evidence in a neutral light and inquire whether we
are able to say, with some objective basis in the record, that a conviction is Aclearly wrong@ or Amanifestly unjust@ because the great weight and
preponderance of the evidence contradicts the jury=s verdict.  Watson v. State,
204 S.W.3d 404, 414B17 (Tex. Crim. App. 2006).  It is not enough that this court
harbor a subjective level of reasonable doubt to overturn a conviction that is
founded on legally sufficient evidence, and this court cannot declare that a
conflict in the evidence justifies a new trial simply because it disagrees with
the jury=s resolution of that conflict.  Id.
at 417.  If this court determines the evidence is factually insufficient, it
must explain in exactly what way it perceives the conflicting evidence greatly
to preponderate against conviction.  Id. at 414B17.  Our evaluation should not
intrude upon the fact finder=s role as the sole judge of the weight and credibility given
to any witness=s testimony.  See Fuentes, 991 S.W.2d at 271.  In conducting a
factual‑sufficiency review, we discuss the evidence appellant claims is
most important in allegedly undermining the jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

The evidence is undisputed that appellant struck his wifeCCanalesCand caused her
injuries.  Appellant, however, disputes that this contact occurred with a rifle
in addition to his fist.  The record contains Canales=s own statements
that appellant struck her with a rifle as well as Officer Rone=s testimony that
Canales=s injuries were
consistent with being struck with a blunt object.  Apart from appellant=s and his sister=s testimony that
appellant struck Canales with his hand and not a rifle, none of the  evidence
supports appellant=s version of events.  The jury, being the
sole judge of the facts and credibility of the witnesses, could choose to
believe or not believe the witnesses at all, or choose to believe or not
believe any portion of their testimony.  Rojas v. State, 171 S.W.3d 442,
445B46 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d).  Based on the evidence adduced at
trial, a rational trier of fact could conclude, beyond a reasonable doubt,
that  appellant assaulted Canales and used a deadly weapon during the
commission of the assault.  See Zimmerman v. State, 754 S.W.2d 402, 405
(Tex. App.BCorpus Christi 1988, pet. ref=d).  We conclude,
after reviewing the evidence in a neutral light, that the verdict is not
against the great weight and preponderance of the evidence and is not clearly
wrong or unjust.  See Watson, 204 S.W.3d at 414B17.  Accordingly,
the evidence is legally and factually sufficient to support appellant=s conviction, and
we overrule appellant=s third issue. 

B.      Did appellant preserve error as to his first
Confrontation Clause issue? 








In his first issue, appellant argues that the trial court
violated his right to confrontation by admitting into evidence Canales=s hearsay
statements through the testimony of Officer Ferguson.  During this testimony,
appellant=s counsel either did not object or he asserted reasons
other than the Confrontation Clause or the Texas Constitution for excluding the
evidence, such as the nonresponsiveness of the answer, hearsay, Aleading question,@ and Anarrative answer.@  Appellant never
objected to the admission of this evidence based on any alleged violation of
the Confrontation Clause or of the Texas Constitution.  Therefore, appellant
failed to preserve error.  See Reyna v. State, 168 S.W.3d 173, 177B79 (Tex. Crim.
App. 2005). 
Accordingly, we overrule appellant=s first issue.

C.        Did
the admission of the 9-1-1 tape violate the Confrontation Clause or Article,
section 10 of the Texas Constitution ?

In his
second issue, appellant asserts that the trial court erred in admitting an
audiotape of Canales=s 9-1-1 call over his objection that admission of this
evidence violated his rights under the Confrontation Clause and under Article
1, section 10 of the Texas Constitution.  On appeal, appellant provides no
argument or authorities with respect to the protection provided by the Texas
Constitution.  Based on this inadequate briefing, we overrule the second issue
as to appellant=s argument under the Texas Constitution.  See Tex. R. App. P. 38.1(h); Russeau v.
State, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005).  

As to
the alleged violation of the Confrontation Clause, in Crawford, the
Supreme Court of the United States interpreted the Confrontation Clause to
prohibit a witness from recounting a declarant=s out‑of‑court statements
that are testimonial unless (1) the declarant is unavailable to testify and (2)
the defendant had a prior opportunity to cross‑examine the declarant,
regardless of whether the declarant=s statements are deemed reliable by
the court.  See Crawford v. Washington, 541 U.S. 36, 68, 124 S. Ct.
1354, 1374, 158 L. Ed. 2d 177 (2004).  To determine whether the admission of
the 9-1-1 tape violated the Confrontation Clause, we must determine whether the
statements on the tape are testimonial.  The Supreme Court recently explained
the distinction between testimonial and nontestimonial statements:








Without attempting to produce an exhaustive
classification of all conceivable statementsCor even all conceivable statements in
response to police interrogationCas either testimonial or
nontestimonial, it suffices to decide the present cases to hold as follows: 
Statements are nontestimonial when made in the course of police interrogation
under circumstances objectively indicating that the primary purpose of the
interrogation is to enable police assistance to meet an ongoing emergency. 
They are testimonial when the circumstances objectively indicate that there is
no such ongoing emergency, and that the primary purpose of the interrogation is
to establish or prove past events potentially relevant to later criminal
prosecution.  

Davis v. Washington, C U.S. C, C, 126 S. Ct. 2266, 2273B74, 165 L. Ed. 2d 224 (2006).

The Davis
court addressed whether statements made by a victim of domestic violence to a
9-1-1 operator[1] were
testimonial in nature.  See id., 126 S. Ct. at 2276B77.  In concluding that the caller=s statements were nontestimonial and
thus admissible, the  Davis court looked to the following factors: (1)
the caller was describing events as they were actually happening rather than
past events; (2) any reasonable listener would recognize that the caller was
facing an ongoing emergency; (3) when viewed objectively, the nature of what
was asked and answered was such that the elicited statements were necessary to
resolve the present emergency, rather than simply to learn what had happened in
the past;  and (4) the caller was frantically answering the 9-1-1 emergency operator=s questions over the phone, in an
environment that was not tranquil, or even safe.  See id. The Davis
court concluded that the caller was Aseeking aid, not telling a story about
the past.@ See id., 126 S. Ct.  at 2279.

The
Supreme Court also observed that Ainitial inquiries@ by law enforcement officers arriving
at crime scenes involving domestic disputes Amay often@ produce nontestimonial statements
because Aofficers called to investigate . . .
need to know whom they are dealing with in order to assess the situation, the
threat to their own safety, and possible danger to the potential victim.@  Id.  Such statements may be
nontestimonial if they constitute Aa cry for help@ or Athe provision of information enabling
officers to end a threatening situation.@  See  id.  








With
these principles in mind, we now examine the statements contained in the 9-1-1
audiotape the trial court admitted into evidence.  The playing time for this
tape is slightly more than four minutes.  At the beginning of the tape, Canales
tells the operator that she wants an ambulance and the police sent to her
mother=s house.  The initial operator then
connects Canales to a second operator who identifies herself as AHouston Fire and Ambulance.@  This operator obtains the following
information from Canales: (1) her location, (2) her name, and (3) her phone
number.  The following exchange then takes place:

[operator]:      Why is an ambulance needed?

[Canales]:       Because my husband hit me in the
mouth with a _____ [inaudible] on my mouth.

[operator]:      O.K. Are you breathing normally m=am?

[Canales]:       Yes, m=am.

[operator]:      Were you sexually assaulted?

[Canales]:       My husband hit me.  He grabbed me,
and he hit me with his rifle.

[operator]:      Is your husband still there?

[Canales]:       No, he took off
running with his brother-in-law.  

The
operator then reconfirmed Canales=s location and asked in what kind of
vehicle Canales=s husband had left.  Canales provided this information.  The
operator then asked if Canales was on any medications, and Canales answered
that she was not. The operator then  asked Canales if she was bleeding. 
Canales responded that she was bleeding Aa lot,@ so the operator gave Canales
instructions as to what to do while Canales waited for the ambulance to
arrive.  The operator  asked the age and race of Canales=s husband and what clothing he was
wearing.  After the operator sought to reconfirm that Canales=s husband had left the location,
Canales stated for the first time that her husband hit her at her house and
that she then left that location and took her children to her mother=s house.  Canales said that this
incident with her husband had occurred ten to fifteen minutes earlier.  The
operator stated, AAnd he had a rifle?@  To which Canales responded, AYes, he does.@  Finally, Canales gave the address
at which she believed her husband could be located.  From listening to the
tape, it is clear that Canales was distraught, and at times she was breathing
heavily.  








As to
the first  consideration discussed by the Davis court, Canales was
describing her current emergency situation and seeking help.  However, as to
the three sentences in which Canales refers to the offense in question, Canales
was not describing events as they were actually happening; instead, she was
describing events that had occurred ten to fifteen minutes earlier.  Our
dissenting colleague seems to indicate that, under Davis, a 9-1-1 caller
must be describing a criminal offense as it is happening, with the perpetrator
present, for the caller=s statements to be nontestimonial.  See post at pp. 3B4.  The Davis court did not so
hold; rather, it stated that this is only one factor to be considered in
determining whether  statements were made under circumstances objectively
indicating that the primary purpose of the interrogation was to enable police
assistance to meet an ongoing emergency.  See id., 126 S. Ct. at 2273B77.  Courts applying Davis
have held statements to be nontestimonial even though they were not describing
events as they were happening.  See, e.g., Martinez v. State, No.
2-06-088-CR,CS.W.3d.C,C, 2007 WL 2067852, at *1, 9B10 (Tex. App.CFort Worth July 19, 2007, no pet. h.)
(holding that statements made by appellant=s son were nontestimonial under Davis,
even though they described past events in which appellant gave son a bag to
hide in his pants); Garcia v. State, 212 S.W.3d 877, 883B84 (Tex. App.CAustin 2006, no pet.) (holding that
statements made by wife were nontestimonial under Davis, even though
they described past events in which her husband had forcibly abducted his child
in violation of a court order); Delacueva v. State, No. 14-05-01115-CR,
2006 WL 3589482, at *3 (Tex. App.CHouston [14th Dist.] Dec. 12, 2006,
pet. ref=d) (not designated for publication)
(holding that statements made by appellant=s girlfriend were nontestimonial
under Davis, even though they described past events in which boyfriend
had Abeat up@ girlfriend). 








As to
the second factor, a review of the tape shows that any reasonable listener
would recognize Canales was facing an ongoing emergency.  She was injured and
bleeding from the assault wounds to her mouth.  She was in distress and was
seeking medical attention for her injuries.  Furthermore, before the State
offered the tape into evidence, Officer Ferguson testified that when he arrived
at Canales=s mother=s house, Canales was extremely upset.  She was crying, shaking, and
afraid that appellant was going to come back and assault her again.  In
addition to this subjective fear, the circumstances shown by the record
objectively indicate there was a risk that appellantCa family memberCwould appear at Canales=s mother=s house.  Appellant recently had been
enraged with his estranged wife and brutally assaulted her at their nearby
home.  He then fled with his brother-in-law.  Although Canales did leave her
house to seek refuge in her mother=s house, it is objectively reasonable
to conclude there was a risk in this domestic context that appellant would
appear at Canales=s mother=s house.              As to the third factor, the nature of
what was asked and answered, when viewed objectively, was such that the
elicited statements were necessary to effectively address the  present
emergency, rather than simply to learn what had happened in the past.  After
Canales sought the help of an ambulance and police, the 9-1-1 operator obtained
important basic information regarding Canales=s identity, location, and
circumstances.  The operator then asked why an ambulance was needed, and
Canales stated that her husband hit her in the mouth.  When asked if she had
been sexually assaulted, Canales stated that her husband had hit her with a
rifle.  The operator asked whether her husband was still there.  The operator
also inquired whether Canales was on any medication, asked about the extent of
her injuries, and gave Canales first-aid instructions to address her profuse
bleeding.  The operator asked Canales for some identifying information about
her husband and reconfirmed that he was not at the location.  The operator
asked Canales how long ago the assault occurred and confirmed that appellant
had a rifle.  The operator=s questions and Canales=s answers were necessary to resolve
both her medical emergency and the responding police officers= need to know Awhom they are dealing with in order
to assess the situation,@ the threat to their own safety, and possible danger to the
potential victim.  Davis, 126 S. Ct. at 2276B79; see also Martinez, 2007 WL
2067852, at 9B11.








As to
the fourth factor, the tape shows that Canales was distraught and frantically
answering the 9-1-1 operator=s questions in an environment that was not tranquil. 
Furthermore, because of the risk that appellant might appear at her mother=s house, the environment was not safe
either.

In sum,
Canales=s statements on the 9-1-1 tape
constitute Aa cry for help@ and Athe provision of information enabling officers to end a
threatening situation.@  See Davis, 126 S. Ct. at 2279.  Canales made these
statements under circumstances objectively indicating that the primary purpose
of the interrogation was to enable police assistance to meet an ongoing
emergency.  The circumstances do not objectively indicate that the primary
purpose of the interrogation was to establish or prove past events potentially
relevant to later criminal prosecution.  See id.  We conclude that
Canales=s statements on the tape were
nontestimonial.[2] See id.,
126 S. Ct. at 2276B79; Martinez, 2007 WL 2067852, at *9B10; Garcia, 212 S.W.3d at 883B84; see also Delacueva, 2006
WL 3589482, at *3.  Therefore, the trial court=s admission of this tape did not
violate appellant=s rights under the Confrontation Clause.  Accordingly, we
overrule appellant=s second issue as to the argument under the Confrontation
Clause.








Having overruled all of appellant=s issues, we
affirm the trial court=s judgment.

 

 

 

/s/      Kem Thompson
Frost

Justice

 

 

Judgment rendered and Memorandum
Opinion of August 31, 2006 Withdrawn and 

Majority and Dissenting Opinions on
Rehearing filed September 27, 2007.

 

Panel
consists of Justices Anderson, Frost, and Edelman.*  (Edelman, J.,
dissenting).

 

 

Publish C Tex. R. App. P. 47.2(b).









[1]  As the Davis court did, we presume without
deciding that the acts of 9-1-1 operators may be considered to be acts of the
police.  See Davis, 126 S. Ct. at 2274, n.2. 





[2]  Our dissenting colleague states that the testimonial
nature of Canales=s statements is further demonstrated by her subsequent
statement to a responding officer that appellant=s brother-in-law had struck her with the rifle and that appellant had
hit her with his fists.  See post at p. 4, n.3. However, our esteemed
colleague has not cited, and research has not revealed, cases holding that a
statement=s reliability or veracity is a factor in determining
whether it is testimonial.  





*  Senior Justice Richard H. Edelman sitting by
assignment.