In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________
 
No. 06-03-00099-CR
______________________________


MICHAEL TODD WEBB, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 20602


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            Michael Todd Webb appeals his conviction by jury trial of possession of a controlled
substance, specifically methamphetamine in an amount of less than one gram. The jury assessed
punishment at two years' imprisonment. On appeal, Webb contends 1) the trial court erred in
admitting his oral statement claiming possession of the substance, 2) the evidence was legally and
factually insufficient to sustain a conviction, and 3) he received ineffective assistance of counsel
because his attorney failed to challenge the admissibility of the controlled substance. We affirm.
            On or about December 7, 2002, Officer William Abbott of the Bonham Police Department
stopped Webb for operating a vehicle with only one headlight. During the investigation of the traffic
offense, Webb granted consent to search his vehicle. Abbott discovered a plastic bag containing
trace amounts of methamphetamine in a closed container on the seat of the vehicle. When none of
the three occupants of the vehicle would admit ownership, Abbott informed all three occupants they
were under arrest. At this point, Webb admitted to possession of the substance. Abbott placed
Webb under arrest and released the truck into the custody of Webb's girlfriend, who was one of the
passengers. 
Admissibility of Oral Statements
            In his first point of error, Webb contends his oral statement in which he claimed ownership
of the substance should not have been admitted because it was the result of a custodial interrogation. 
Webb objected to the admission of the statement because he was in custody at the time it was made
and had not received the mandatory admonishments. Webb argues that the unrecorded statement
was admitted in violation of Article 38.22 of the Texas Code of Criminal Procedure and Miranda. 
See Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon Supp. 2004); Miranda v. Arizona, 384 U.S.
436 (1966). Webb's argument fails because the statements do not stem from a custodial
interrogation.
            A trial court's decision to grant or deny a motion to suppress is reviewed under an abuse of
discretion standard. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). The general rule
is that an appellate court should afford almost total deference to a trial court's determination of the
historical facts supported by the record, especially when the trial court's fact-findings are based on
an evaluation of credibility and demeanor. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App.
2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We are also to afford such
deference to a trial court's ruling on "application of law to fact questions," also known as "mixed
questions of law and fact," if the resolution of those questions turns on an evaluation of credibility
and demeanor. Ross, 32 S.W.3d at 856. We may review de novo those questions not turning on
credibility and demeanor. Id. 
            The United States Supreme Court has held that the statements must "stem from custodial
interrogation" for the procedural safeguards of Miranda to apply. R.I. v. Innis, 446 U.S. 291, 300
(1980). Miranda defined "custodial interrogation" as "questioning initiated by law enforcement
officers after a person has been taken into custody or otherwise deprived of his freedom of action
in any significant way." Miranda, 386 U.S. at 444. Interrogation must be express questioning or its
functional equivalent. Innis, 446 U.S. at 300–01. The functional equivalent of express questioning
is a practice that "police should know is reasonably likely to evoke an incriminating response from
a suspect." Id. at 301. 
            The first issue in determining whether the statement stems from a custodial interrogation is
whether Webb was in custody. The United States Supreme Court has held that the typical traffic
stop does not constitute custody for the purposes of Miranda. Berkemer v. McCarty, 468 U.S. 420
(1984). Whether a person is in "custody" depends on whether, under the circumstances, a reasonable
person would believe his or her freedom of movement was restrained to the degree associated with
a formal arrest. Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). The subjective
intent of the law enforcement officials is irrelevant unless that intent is somehow communicated or
otherwise manifested to the suspect. Stansbury v. California, 511 U.S. 318, 319 (1994). A
determination of custody should be based entirely on objective circumstances. Dowhitt, 931 S.W.2d
at 254.
            The Texas Court of Criminal Appeals in Dowhitt outlined four general situations which may
constitute custody: 1) when the suspect is physically deprived of his or her freedom of action in any
significant way, 2) when a law enforcement officer tells the suspect he or she cannot leave, 3) when
law enforcement officers create a situation that would lead a reasonable person to believe his or her
freedom of movement has been significantly restricted, and 4) when there is manifestation of
probable cause to arrest and law enforcement officers do not tell the suspect he or she is free to leave. 
Id. at 255. The Texas Court of Criminal Appeals explained that, unlike the first three situations, the
fourth situation does not automatically establish custody, but rather must be considered with other
circumstances to determine whether the combined effect would lead a reasonable person to believe
he or she is under restraint to the degree associated with an arrest. Id.
            Whether an individual was under arrest requires consideration of the degree of the restriction
or restraint to distinguish an arrest from other detentions. Article 15.22 of the Texas Code of
Criminal Procedure provides that "[a] person is arrested when he has been actually placed under
restraint or taken into custody." Tex. Code Crim. Proc. Ann. art. 15.22 (Vernon 1977). The Texas
Court of Criminal Appeals has interpreted the above statute to require consideration of the degree
of the restriction or restraint to distinguish an arrest from other detentions. See Amores v. State, 816
S.W.2d 407, 411–12 (Tex. Crim. App. 1991), modified sub silentio, Medford v. State, 13 S.W.3d
769, 773 (Tex. Crim. App. 2000). The relevant inquiry according to the Texas Court of Criminal
Appeals is whether "appellant had been restricted or restrained in his liberty to such a degree as to
constitute an arrest." Id. at 412. An "arrest" occurs "when a person's liberty of movement is
successfully restricted or restrained, whether this is achieved by an officer's physical force or the
suspect's submission to the officer's authority." Medford, 13 S.W.3d at 773. In Medford, the Texas
Court of Criminal Appeals held an arrest is complete only if "a reasonable person in the suspect's
position would have understood the situation to constitute a restraint on freedom of movement of
the degree which the law associates with formal arrest." Medford, 13 S.W.3d at 773 (citing United
States v. Corral-Franco, 848 F.2d 536, 540 (5th Cir. 1988)). The subjective intent of either the
police officer or the defendant is irrelevant. Vicioso v. State, 54 S.W.3d 104, 110 (Tex. App.—Waco
2001, pet. ref'd), cert. denied, 536 U.S. 915 (2002); see Medford, 13 S.W.3d at 773; cf. California
v. Hodari D., 499 U.S. 621, 628 (1991) (show of authority should be determined objectively). 
Factors which Texas courts have considered include whether the officer actually undertakes an
investigation,


 the accused is handcuffed,


 the accused is detained at gunpoint,


 the number of police
which far outnumber the citizens,


 the use of threatening language,


 the transporting of the accused
to another location,


 the blocking of the accused's vehicle,


 and the use of other physical force.



            Abbott testified that, after he discovered the plastic bag, he asked Webb and the passengers
who it belonged to. Abbott testified one of the suspects responded that "it didn't belong to any of
them." Abbott then had them place their hands on the rear of the pickup truck and advised them he
was placing them all under arrest. At this point, Webb admitted ownership of the narcotics. Abbott
placed Webb under arrest. 
            We must look at the totality of the circumstances and determine whether Webb's freedom of
movement was restrained to a degree associated with a formal arrest at the time of the interrogation. 
Several jurisdictions have held that asking a suspect to identify evidence as his or her property is 
interrogation. United States v. Corbin, 494 F. Supp. 244 (M.D.N.C. 1980) (gun); Lornitis v. State,
394 So. 2d 455 (Fla. Dist. Ct. App. 1981) (luggage with marihuana); People v. Jordan, 413 N.E.2d
195 (Ill. App. Ct. 1980) ("grassy substance"). However, Webb was not in custody at the time Abbott
inquired as to the ownership of the drugs. Although Abbott had probable cause at the time he
inquired as to the ownership of the drugs,


 the circumstances of the detention indicate Webb was not
restricted or restrained in his liberty to such a degree as that a reasonable person would have believed
he or she was under arrest. Abbott did not inform the occupants he had probable cause to arrest all
of them before inquiring into the ownership of the drugs. Further, Abbott did not restrain any of the
occupants in any degree greater than a typical traffic stop detention until he ordered them to place
their hands on the back of the truck and informed them of the arrest. This was after the inquiry as
to the ownership of the drugs. Therefore, at the point of Abbott's inquiry, Webb was not in custody. 
It was not until the officer ordered all three suspects to place their hands on the back of the truck that
they were restrained to such a degree a reasonable person could have concluded he or she was under
arrest. 
            The remaining question is whether any of Abbott's actions after Webb was in custody
resulted in an interrogation. Webb argues Abbott had told the three suspects they were all going to
be arrested unless someone claimed ownership of the drugs. Although the other two occupants were
released when Webb claimed possession, the record, including the partial videotape, does not
indicate such a statement was made. Therefore, the question is whether Abbott knew or should have
known the arrest of the occupants was reasonably likely to evoke an incriminating response from a
suspect. Innis states that the determination of whether police knew or should have known the actions
would evoke an incriminating statement "focuses primarily upon the perceptions of the suspect,
rather than the intent of the police" because the Miranda safeguards apply without regard to the
intent of the police. Innis does note that the intent of the officer is not irrelevant because it may have
bearing on whether "their words or actions were reasonably likely to evoke an incriminating
response." Innis, 446 U.S. at 301 n.7. There is no evidence that Abbott's intent was to elicit an
incriminating statement or that he knew the arrest of all three suspects would be reasonably likely
to result in an incriminating statement. The United States Supreme Court has held that
"'[i]nterrogation,' as conceptualized in the Miranda opinion, must reflect a measure of compulsion
above and beyond that inherent in custody itself." Id. at 300. Thus, Abbott's actions in merely
arresting the three occupants was not the functional equivalent of interrogation.
            As discussed above, Webb's statement does not stem from a custodial interrogation.
Voluntary statements, made while in custody but not in response to interrogation, are admissible. 
Stevens v. State, 671 S.W.2d 517, 520 (Tex. Crim. App. 1984); see Tex. Code Crim. Proc. Ann.
art. 38.22. Because the statements were voluntary and do not stem from custodial interrogation, the
trial court did not err in admitting them over Webb's objection.
Sufficiency of the Evidence
            Webb's second point of error alleges that the evidence is both legally and factually
insufficient. Specifically, Webb argues that, without the statement claiming ownership of the drugs,
there is insufficient affirmative links to the drugs and insufficient corroboration of the accomplice
witness' testimony. 
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991).
            When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, No. 539-02,
slip op. at 8, 2004 Lexis 668, at *10–11 (Tex. Crim. App. Apr. 21, 2004). There are two ways in
which we may find the evidence to be factually insufficient. First, if the evidence supporting the
verdict, considered alone, is too weak to support the jury's finding of guilt beyond a reasonable
doubt, then we must find the evidence insufficient. Id. Second, if—when we weigh the evidence
supporting and contravening the conviction—we conclude that the contrary evidence is strong
enough that the State could not have met its burden of proof, we must find the evidence insufficient. 
Id. "Stated another way, evidence supporting guilt can 'outweigh' the contrary proof and still be
factually insufficient under a beyond-a-reasonable doubt standard." Id., No. 539-02, slip op. at 8,
2004 Lexis 668, at *20. If the evidence is factually insufficient, then we must reverse the judgment
and remand for a new trial. Id., No. 539-02, slip op. at 5, 2004 Lexis 668, at *11.
            Webb argues the accomplice witness testimony is uncorroborated. Charles Sleeman, one of
the passengers, testified Webb handed the container to Carol Shipp, the other passenger, before
stopping the truck. Shipp immediately passed the container to Sleeman, who threw it on the other
side of the pickup truck. Article 38.14 provides that "[a] conviction cannot be had upon the
testimony of an accomplice unless corroborated by other evidence tending to connect the defendant
with the offense committed; and the corroboration is not sufficient if it merely shows the commission
of the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 1979). "The test for weighing the
sufficiency of corroborative evidence is to eliminate from consideration the testimony of the
accomplice witness and then examine the testimony of other witnesses to ascertain if there is
evidence which tends to connect the accused with the commission of the offense." Hernandez v.
State, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997) (citing Reed v. State, 744 S.W.2d 112, 125 (Tex.
Crim. App. 1988)); see Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). The
nonaccomplice evidence does not need to prove all the elements of the alleged offense. Hernandez,
939 S.W.2d at 176; Underwood v. State, 967 S.W.2d 925, 928 (Tex. App.—Beaumont 1998, pet.
ref'd). 
            The accomplice witness rule only requires that there is some nonaccomplice evidence which
"tends to connect" the accused to the commission of the offense alleged in the indictment.
Hernandez, 939 S.W.2d at 176. The mere presence of a defendant at the scene of the crime, though,
is insufficient to corroborate accomplice witness testimony. Cox v. State, 830 S.W.2d 609, 611 (Tex.
Crim. App. 1992); Beathard v. State, 767 S.W.2d 423, 428 (Tex. Crim. App. 1989); Howard v.
State, 972 S.W.2d 121, 127 (Tex. App.—Austin 1998, no pet.). Webb admitted ownership of the
narcotics. Abbott testified Webb failed to pull over promptly and appeared nervous. Matters
concerning an evaluation of credibility and demeanor are the sole province of the jury. Cain v. State,
958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997). There is sufficient evidence that "tends to
connect" Webb to the offense and therefore corroborate the testimony of Sleeman. 
            Because the contraband was not found on the accused's person or in the exclusive possession
of the accused, the evidence must affirmatively link the accused to the contraband. Jones v. State,
963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref'd). This Court has held that factors
which should be considered when evaluating whether an affirmative link exists are:
1) the defendant's presence when the search was executed; 2) whether the contraband
was in plain view; 3) the defendant's proximity to and the accessibility of the
contraband; 4) whether the defendant was under the influence of a controlled
substance when arrested; 5) whether the defendant possessed other contraband when
arrested; 6) whether the defendant made incriminating statements when arrested;
7) whether the defendant attempted to flee; 8) whether the defendant made furtive
gestures; 9) whether there was an odor of the contraband; 10) whether other
contraband or drug paraphernalia was present; 11) whether defendant owned or had
the right to possess the place where the drugs were found; and 12) whether the place
the drugs were found was enclosed. 
Id.; see Chavez v. State, 769 S.W.2d 284, 288 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). The
affirmative link to the contraband does not need to exclude every other reasonable hypothesis except
the defendant's guilt. Brown v. State, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995). "The number
of factors present is not as important as the degree to which the factors tend to affirmatively link the
accused to the contraband." Williams v. State, 906 S.W.2d 58, 65 (Tex. App.—Tyler 1995, pet.
ref'd). 
            The evidence did affirmatively link Webb to the contraband. Webb was present when the
search was conducted and owned the vehicle in which the drugs were found. Further, Webb
admitted ownership of the drugs. Abbott testified Webb failed to pull over promptly. Sleeman
testified Webb handed the container to Shipp before stopping the truck. Shipp immediately passed
the container to Sleeman, who threw it on the other side of the truck. We believe that a rational juror
could have found that sufficient affirmative links existed to conclude Webb possessed the controlled
substance beyond a reasonable doubt. Further, the verdict is not so contrary to the overwhelming
weight of the evidence as to be clearly wrong, or so weak as to be clearly wrong or manifestly unjust. 
            Because the accomplice witness testimony was sufficiently corroborated and there are
sufficient affirmative links, the evidence was both factually and legally sufficient. We overrule
Webb's second point of error.
Ineffective Assistance of Counsel
            In his third point of error, Webb argues he received ineffective assistance of counsel because
his attorney failed to challenge the admissibility of the evidence. Webb asserts that his consent to
search the vehicle was limited to "open containers." Because the drugs were found in a closed
container and not in plain view, Webb contends the evidence was illegally obtained and should have
been suppressed. Webb's argument fails because he has not overcome the presumption that his
counsel's performance was adequate.
            After pulling Webb's vehicle over, Abbott observed that Webb appeared nervous, requested
that Webb exit the vehicle, and requested consent to search the vehicle. The videotape, which was
admitted into evidence, records their subsequent conversation as follows:
[OFFICER:]Do you mind if I check for open containers or anything like
that, is it okay?
                        [WEBB:]There's nothing in the truck.
[OFFICER:]That's what I'm after, it'll just take a second if there ain't
nothing in the truck.
[WEBB:]There might be empty beer cans in the back.
[OFFICER:]Well, that's okay. If there's empty beer cans in the back. Just
take a second --
[WEBB:] All right.
[OFFICER:]Is that all right?
                        [WEBB:]        I guess. 
            While searching the vehicle, Abbott saw a silver, metallic container laying on the front seat
of the vehicle in "plain view." Abbott testified the container was "very unique in design and style"
and reminded him of a World War I or World War II match holder. Abbott removed the container
from the vehicle and attempted to open it. After initially having difficulty opening the container,
Abbott requested one of the passengers to open it, who refused. Eventually, Abbott opened the
container and found a plastic bag containing a trace of a white, powdery substance. 
            When the State offered the container into evidence, defense counsel stated: "We have no
objection." Defense counsel also stated he had "no objection" to the bag containing traces of
methamphetamine. Defense counsel did object to the introduction of the drug analysis report by the
Texas Department of Public Safety Crime Laboratory alleging the report was hearsay. 
            Both the Sixth Amendment to the United States Constitution and the Texas Constitution
confer a right to effective representation by counsel. U.S. Const. amend. VI; Tex. Const. art. I,
§ 10. If counsel's performance is ineffective, the conviction cannot stand. The Texas Court of
Criminal Appeals has held that the Texas Constitution does not impose a higher standard than the
Sixth Amendment. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Hernandez v.
State, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986). The Sixth Amendment standard, established
by Strickland, requires a defendant alleging ineffective assistance of counsel to show that his or her
counsel's performance at trial was deficient and that counsel's deficient performance prejudiced his
or her defense. See Strickland v. Washington, 466 U.S. 668 (1984); see also Bone v. State, 77
S.W.3d 828, 833 (Tex. Crim. App. 2002). 
            To satisfy the deficiency prong of the test, Webb must prove, by a preponderance of the
evidence, that his counsel's representation fell below the objective standard of professional norms. 
Bone, 77 S.W.3d at 833. There is a strong presumption that counsel's performance was adequate. 
Id. The reason for this assumption is that counsel at trial is better positioned to judge matters of
strategy than an appellate court reviewing a cold record. An appellate court should not "conclude
the challenged conduct constituted deficient performance unless the conduct was so outrageous that
no competent attorney would have engaged in it." Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim.
App. 2001). 
            There is no indication in the record as to why Webb's counsel chose not to challenge the
admissibility of the evidence. Ineffective assistance of counsel claims "must be firmly founded in
the record." Thompson v. State, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999). Direct appeal is
a poor vehicle to bring an ineffective assistance of counsel claim. Direct appeals often present a
limited record for review of the typical issues raised in an ineffective assistance point.


 One way
to get evidence of counsel's trial strategy or other matters in the direct appeal record is through a
motion for new trial. Another way to develop a proper record is through a hearing in a habeas corpus
collateral attack. See generally Tex. Code Crim. Proc. Ann. arts. 11.01–11.65 (Vernon 1977 &
Supp. 2004). 
            Webb's ineffective assistance of counsel claim fails because it concerns a matter of strategy. 
An ineffective assistance of counsel claim cannot be based on a difference of opinion concerning
strategy. "[T]he defendant must prove, by a preponderance of the evidence, that there is . . . no
plausible professional reason for a specific act or omission." Bone, 77 S.W.3d at 836. Webb's
attorney at trial could have decided that the better strategy was to argue that the drugs could have
belonged to one of the passengers of the vehicle rather than to Webb. The strategic decision not to
challenge the evidence allowed Webb's attorney to focus his efforts on the argument that the drugs
belonged to one of the passengers. Further, Webb's attorney could have decided that the phrase
"anything like that" prevented the scope of consent from being limited to "open containers." Abbott
had previously engaged in a lengthy discussion of history of drug use by one of Webb's passengers. 
Webb's attorney could have decided that the scope of the consent was not limited to "open
containers" and decided not to pursue the suppression of the drugs. This Court should not consider
the wisdom of such a strategy, since ineffective assistance of counsel claims cannot be "built on
retrospective speculation." Bone, 77 S.W.3d at 835. "If counsel's reasons for his conduct do not
appear in the record and there is at least the possibility that the conduct could have been legitimate
trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim
on direct appeal." Ortiz v. State, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002). Since there is a
plausible professional reason for not challenging the admissibility of the evidence, Webb has failed
to meet his burden of showing that his counsel's performance was deficient. Therefore, we overrule
Webb's third point of error.
            For the reasons stated, we affirm the judgment of the trial court.
 


                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          March 31, 2004
Date Decided:             April 29, 2004

Do Not Publish