Tyrone UNDERWOOD, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–96–327 CR.

Court of Appeals of Texas,
Beaumont.

Submitted March 13, 1998.

Decided April 22, 1998.

**926**

Lynda Russell, Center, for appellant.

Clyde M. Herrington, District Attorney, David V. Wilson, II, Assistant District Attorney, Lufkin, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

Tyrone Underwood was convicted of engaging in organized criminal activity and sentenced to confinement in the Texas Department of Criminal Justice, Institutional Division, for thirty years. Underwood raises four points of error on appeal.

Point of error one contends: "The trial court erred in failing to suppress evidence of the search when the State failed to meet it's [sic] burden of proof by producing a valid search warrant at trial." Lufkin police officers stopped two vehicles, one of which was driven by Underwood, discovered cocaine dropped by passenger Robert Underwood, arrested the four occupants of the two vehicles, found about $2,900 in currency in the appellant's pocket, and secured a search warrant for the Underwoods' residence, where they seized 100 small zip-lock baggies and two scales.

Underwood filed a pre-trial motion to suppress which sought to suppress 1) the currency found on the person of Tyrone Underwood, and 2) the contraband recovered from the ground after being discarded by Robert Underwood. We do not have a record of a pre-trial suppression hearing. Defense counsel announced he was re-urging his motion to suppress before the State began its case-in-chief, after the cooperating accomplice and the arresting officer testified, and again at the close of the State's case-in-chief. Crucial to our analysis is the fact that the evidence sought to be suppressed in this motion was *not* seized pursuant to the search warrant for the residence, nor could it possibly be considered to be fruits of the search of the residence, considering it was recovered before the search warrant was issued.

The trial court sustained defense counsel's objection when the State sought to introduce the search warrant the officers obtained in order to search the Underwoods' residence. Unfortunately, most of the objection, having been stated outside the hearing of the court reporter, did not make it into the record. Appellant contends the trial court sustained his best evidence objection because the State produced a photocopy of the warrant instead of the original, but several objections were stated on the record, and something occurred in an unrecorded bench conference. Defense counsel then stated:

[By Defense Counsel:] I'm going to object to any more testimony since the court sustained my objection to the search war-

rant. I'm going to object to any testimony in regard to this.

THE COURT: Overruled.

What remains of any objection to evidence seized in the search of the house is the following exchange, which occurred when Officer Billy Murphy testified about the baggies he recovered in the house:

[Defense Counsel:] Your honor I'm going to make my objection earlier, same one that I've made in the past.

THE COURT: All right. And based upon the same reasons and objection as has been stated to the court before. The court will overrule the objection at this time.

The scales were admitted into evidence through the testimony of a different police officer. The only objection to the scales was an extraneous offense objection.

It is clear from the record that the State produced the warrant, or at least a photocopy of the warrant. Although it was before the trial court, this document was not made a part of the record for purposes of appellate review of the oral motion to suppress.

Comparing the point of error, the argument in the brief, and the record, we discern the issue to be whether the State could introduce the seized baggies found in appellant's abode without having first introduced a search warrant into evidence.

Underwood places his reliance upon the rule stated in *Ehrman v. State:*

When a search has been conducted by virtue of a search warrant, and a timely objection is made, it is incumbent upon the State to produce and exhibit to the court a valid search warrant. If the State fails to do so, and without more, the appellant's objection is overruled permitting evidence of the search and its fruits to be admitted, reversible error will result. *Vines v. State,* 397 S.W.2d 868 (Tex.Crim.App.1966).

*Ehrman v. State,* 580 S.W.2d 581, 584 (Tex. Crim.App.1979), *overruled on other grounds, Sherlock v. State,* 632 S.W.2d 604, 607 (Tex. Crim.App.1982).

■ The reason the State is required to produce the warrant is so the trial court may inspect the documents and determine whether probable cause existed and ensure that the defendant's rights have been fully protected. *Garrett v. State,* 791 S.W.2d 137, 140 (Tex.Crim.App.1990). The requirements are met without actual presentation of the warrant if the trial court had adequate opportunity to determine probable cause existed. *Etheridge v. State,* 903 S.W.2d 1, 19 (Tex. Crim.App.1994). Therein lies the weakness in Underwood's position, for it presupposes that if a motion to suppress evidence is filed, the State must produce the actual search warrant and introduce it into evidence.

As we have already mentioned, the evidence challenged in the written motion to suppress is evidence seized pursuant to a warrantless arrest, not pursuant to the search warrant. Assuming Underwood's challenge to the offer of a copy of the warrant alerted the court that Underwood challenged the existence of a search warrant, we must determine whether the State can meet its burden of production without producing the actual warrant. In *Cannady v. State,* the court held the State met its burden where the record reflected the State exhibited certified copies of the warrant and affidavit to the judge. *Cannady v. State,* 582 S.W.2d 467, 469 (Tex.Crim.App.1979). In some cases, it appears the warrant and affidavit were not even produced for the trial court's inspection. In *Ortega v. State,* the court held that by making an objection on the merits to the warrant and affidavit, the appellant had already recognized the existence of a search warrant, so that the burden shifted to him to ensure it was included in the appellate record. *Ortega v. State,* 464 S.W.2d 876, 878 (Tex.Crim.App.1971). The court held:

It is a better practice to show in the record that the warrant was exhibited to the court. However, when the existence of the warrant is recognized in a motion to suppress and there is uncontradicted testimony that a warrant existed, as in the present case, and there is no objection to its validity on its face, we hold that it is not necessary for the record to show that the warrant was exhibited to the court.

*Id.*

■ While the warrant and its supporting affidavit do not appear in the record, beyond

question they existed, for the State introduced testimony that a warrant was obtained, and Underwood produced no evidence to the contrary. Point of error one is overruled.

Point of error two maintains: "Pursuant to Texas Code of Criminal Procedure art. 38.14, the evidence is insufficient to corroborate the State's accomplice witness testimony." The indictment charged that Underwood, with the intent to participate in a combination consisting of appellant, Robert Underwood, and Lonise (Lonza) Clark, conspired to commit the offense of delivery of a controlled substance. Tina Moffett, a passenger in the other automobile, testified as a witness for the prosecution. Underwood argues that without Moffett's testimony, all the State proved was that Robert Underwood possessed cocaine.

■ "The test for weighing the sufficiency of corroborative evidence is to eliminate from consideration the testimony of the accomplice witness and then examine the testimony of other witnesses to ascertain if there is evidence which tends to connect the accused with the commission of the offense." *Hernandez v. State,* 939 S.W.2d 173, 176 (Tex. Crim.App.1997). The corroborating evidence need not be sufficient in itself to establish the accused's guilt beyond a reasonable doubt, nor must it directly link the accused to the commission of the offense. *Id.* "The accomplice witness rule is satisfied if there is *some* non-accomplice evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment." *Id.*

■ The appellant was driving the car. Evidence that appellant was in the company of the accomplice at or near the time or place of a crime is proper corroborating evidence to support a conviction. *Hernandez,* 939 S.W.2d at 178. Evidence which merely shows commission of the offense, however, without connecting the accused to that offense, is insufficient. *See* TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). Cases finding sufficient corroboration articulate suspicious circumstances in addition to presence at the time and place of the offense. *See McDuff v. State,* 939 S.W.2d 607, 612 (Tex.Crim.App.), *cert. denied,* —— U.S. ——,

118 S.Ct. 125, 139 L.Ed.2d 75 (1997) (hair found in car); *Dowthitt v. State,* 931 S.W.2d 244, 250 (Tex.Crim.App.1996) (blood spatters on clothing); *Richardson v. State,* 879 S.W.2d 874, 880 (Tex.Crim.App.1993) (ill will toward victim and ownership of Uzi); *Burks v. State,* 876 S.W.2d 877, 888 (Tex.Crim.App. 1994) (flight); *Gill v. State,* 873 S.W.2d 45, 49 (Tex.Crim.App.1994) (joint possession of stolen property); *Cox v. State,* 830 S.W.2d 609, 612 (Tex.Crim.App.1992) (abandoned victim); *Beathard v. State,* 767 S.W.2d 423, 430 (Tex. Crim.App.1989) (suspicious alibi); *Cockrum v. State,* 758 S.W.2d 577, 581 (Tex.Crim.App. 1988) (nervousness); *Reed v. State,* 744 S.W.2d 112, 127 (Tex.Crim.App.1988) (time discrepancies and recognition of body).

One intermediate court found insufficient corroboration and ordered the appellant's acquittal, in an appeal where the accused was the driver of a car in which drugs were found on the passenger seat. *Abu–Shabaam v. State,* 848 S.W.2d 782 (Tex.App.—Houston [14th Dist.] ), *vacated on other grounds,* 856 S.W.2d 436 (Tex.Crim.App.1993). Although it is similar, in our appeal we find additional suspicious circumstances not present in *Abu–Shabaam.*

Responding to an anonymous tip that a gray and a blue car traveling together in a particular location were engaged in drug trafficking, officers in a cruiser and an unmarked truck followed the gray and blue automobiles. Once Underwood noticed he was being followed, he accelerated his speed beyond that which is safe for the residential streets upon which he was traveling. The officer engaged his overhead lights, at which time Underwood stopped his car in the street and Underwood and his brother emerged from the vehicle. Underwood walked away, never breaking *into* a run, then stopped when so ordered, but the passenger, Underwood's brother Robert, ran away, throwing down a bag of cocaine in the process. The cocaine weighed 6.05 grams and had been freshly basified.

A search of Underwood revealed approximately $2,900 in currency in his pocket. Underwood claimed he had a large sum of money because he was coming to look at a truck

at J.D. Pike's house, where they were stopped. He told the officers he mowed yards for a living. The two women following Underwood were driving a rental car. Both women gave the officers false names. Lonza Clark gave the officers' another woman's identification card.

The officers obtained a search warrant for the Underwoods' residence. The officers found drug paraphernalia in the house. The small baggies, scales, and razor blades were consistent with the manufacture and delivery of illegal drugs.

Lonza Clark, Underwood's girlfriend and the driver of the blue car, claimed they obtained the rental car because Underwood had just purchased the gray car and was not sure it was reliable enough to make it to their destination, Houston. She admitted all four people had occupied one car prior to dividing up to ride in two cars. According to Clark, they were going to Houston to celebrate Valentine's Day by shopping and dining, although the two couples were celebrating this romantic holiday in separate vehicles. Clark testified Underwood does not mow yards, but makes his money selling puppies.

The accomplice witness, Tina Moffett, testified Underwood asked her if she wanted to go to Houston. The purpose of the trip was to purchase cocaine. When they did not head in the direction of Houston, Clark explained Robert Underwood was going to make a cocaine sale first.

■ The accomplice's testimony is corroborated by the fact that appellant was driving; he tried to evade the officers; his passenger ran away once Underwood stopped the car; Underwood himself tried to walk away from the scene; drug paraphernalia was recovered from his residence; and the people he was traveling with provided false names to the police. Furthermore, Underwood and Clark provided contradictory explanations for why they were traveling and what they were doing. Especially suspicious was the explanation for taking two cars, one of which was a rental car, to purchase yet another vehicle or to travel to a place when all of the passengers could have traveled in one vehicle. While this evidence is not particularly impressive, we must bear in mind that the corroborative evidence need not be of itself sufficient to support a finding of guilt; the requirement for corroboration is an entirely statutory rule which exists to protect against the possibility of false testimony given the inherently unreliable nature of accomplice witness testimony. We conclude the combined weight of the incriminating evidence furnished by the non-accomplice testimony tends to connect Underwood to the commission of the offense. Point of error two is overruled.

■ Point of error three contends: "The evidence presented at trial is legally insufficient to support appellant's conviction when the State failed to prove the elements of unlawful delivery of a controlled substance." The standard of review of the sufficiency of the evidence is whether, viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The standard is applicable to both direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991). Sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge for the case, which accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). In our review of the legal sufficiency of the evidence, we must consider all the evidence the jury was permitted, properly or improperly, to consider. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App.1993); *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim.App.1991). As the trier of fact, the jury is the sole judge of the credibility of the witnesses and may choose to believe or disbelieve all or any part of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986).

Underwood stands convicted of engaging in organized criminal activity. TEX. PEN. CODE ANN. § 71.02(a)(5) (Vernon Supp.1998). A person commits this offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination he commits or conspires to commit unlawful delivery of a controlled substance. *Id.* Underwood claims the evidence is legally insufficient to support a finding of guilt because the State failed to prove the underlying offense, delivery of a controlled substance in an amount more than 4 grams but less than 200 grams. Specifically, Underwood argues the State failed to prove that he personally possessed the cocaine, and further failed to prove there was a transfer of a controlled substance to anyone.

■ The offense of engaging in organized criminal activity is drafted in such a way that the predicate offense need not be completed. Furthermore, the predicate offense need not be carried out by the accused, as long he commits an overt act in furtherance of the combination. " 'Conspires to commit' means that a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement. An agreement constituting conspiring to commit may be inferred from the acts of the parties." TEX. PEN.CODE ANN. § 71.01(b) (Vernon 1994). The overt act in pursuance of the conspiracy need not itself be a criminal act. *Barber v. State,* 764 S.W.2d 232, 235 (Tex.Crim.App.1988).

■ Tyrone Underwood specifically asked Moffett if she wanted to go to Houston to engage in a drug transaction. Then, according to Moffett, Lonza Clark explained to her that Robert Underwood was going to sell some cocaine before they went to Houston to buy cocaine. Tyrone Underwood drove from his home to another address in Lufkin, transporting his passenger, Robert Underwood, who held 6.05 grams of crack cocaine. Lonza Clark, possessing knowledge of why they were traveling, followed behind Underwood in a separate vehicle. From these acts, the

jury could infer Tyrone Underwood, Robert Underwood, and Clark agreed to engage in delivery of a controlled substance. All three engaged in an overt act in furtherance of the conspiracy. Viewing the evidence in the light most favorable to the prosecution, we find a rational trier of fact could have found beyond a reasonable doubt the elements of the offense charged. Point of error three is overruled.

The final point of error urges: "The evidence presented at trial is factually insufficient to support appellant's conviction when the State failed to prove that all of the elements of a combination exist." A "combination" means three or more persons who collaborate in carrying on criminal activities. TEX. PEN.CODE ANN. § 71.01(a) (Vernon 1994).

A factual sufficiency review of the jury's verdict presupposes the evidence is legally sufficient under the *Jackson v. Virginia* standard. *Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App.1996). We consider all of the evidence in the record related to the appellant's sufficiency challenge, not just the evidence which supports the verdict, then impartially review the evidence the jury considered which tends to prove the existence of the disputed fact, comparing it to the evidence which tends to disprove that fact. *Santellan v. State,* 939 S.W.2d 155, 164 (Tex. Crim.App.1997). Since we may not substitute our judgment for that of the fact finder, we set aside a verdict only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.; Clewis,* 922 S.W.2d at 129.

Underwood contends proof of his participation in a combination with Robert Underwood and Lonza Clark depends upon Tina Moffett's testimony, which is suspect because she is an accomplice and because she obtained her information through Clark. We have already determined Moffett's testimony is sufficiently corroborated to be considered in a sufficiency review. Clark's statements to Moffett were against Clark's penal interest, and the jury could assess her credibility

because she did take the stand to deny she made the statements to Moffett.

Circumstances, Underwood argues, which weigh against a finding of guilt include testimony that he did not run away when he got out of the car, Clark's denial of Moffett's claims regarding selling crack and her testimony that drug paraphernalia was not visible at the house, lack of exclusive control of the residence where the paraphernalia was found, the failure to seize the razor blades, Pike's denial that drugs were being delivered to him and his explanation that Underwood was interested in buying a truck he had for sale.

Since direct evidence is rarely available to prove a conspiracy hatched in secret, circumstantial evidence including the conspiratorial conduct must be relied on to prove the essential elements of the crime. *See Farrington v. State*, 489 S.W.2d 607 (Tex.Crim.App.1972). Underwood did not run away once he left his vehicle, but the police officers testified Underwood accelerated to an unsafe velocity, from which the jury might infer guilty knowledge. Underwood did walk away, and, once detained, became belligerent. The person who actually possessed the contraband did flee. The officers who searched the house did not inform the jury of where in the house the paraphernalia was located or whether it was in plain view, but their testimony was sufficient to establish that there was drug trafficking activity occurring in Underwood's home. Pike testified he was a law abiding bail bondsman and used car salesman, and denied the cocaine was being delivered to him, but the evidence established Underwood was indeed going to Pike's and Robert Underwood did have 6.05 grams of crack on this person. Underwood recruited Moffett to assist in their drug trafficking, although he did not discuss the delivery to Pike. Clark, on the other hand, knew Robert Underwood was going to deliver some cocaine before they drove to Houston. Viewing all of the evidence impartially, we find the evidence does not overwhelmingly preponderate against guilt; therefore, the evidence to convict is factually sufficient to support the verdict. Point of error four is overruled.

We affirm the judgment and sentence of the trial court.

AFFIRMED.