6-96-028-CV Long Trusts v. Dowd 


















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-06-00075-CV
______________________________



IN RE: STANLEY V. GRAFF

 


                                                                                                                                                             

Writ of Injunction





                                                                                                                                                             
                          


Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion Per Curiam



MEMORANDUM OPINION

            Appellant, Stanley V. Graff, has filed an application for writ of injunction. This
extraordinary writ asks this Court to "issue an order directing the Appellees to cease all work of any
kind on Graff's property related to the construction of a road on Graff's property pending the final
judgment of this Court in this appeal." Because this involves an application for extraordinary writ,
we order these writ proceedings to be severed from Graff's underlying appeal against Vernon Berry,
et al. We assign the application for writ of injunction to cause number 06-06-00075-CV. 
            We deny the application for writ of injunction.
 
 
                                                                        PER CURIAM
 
Date Submitted:          July 10, 2006
Date Decided:             July 11, 2006



his conviction for manufacture of a controlled substance, namely
methamphetamine. During an investigation of a suspected methamphetamine laboratory, police 
discovered, in a motel room that Lowe was occupying, both equipment which could be used to
manufacture methamphetamine and methamphetamine in the process of being produced. After the
jury found Lowe guilty, Lowe pled true to two prior convictions enhancing the punishment range to
not less than twenty-five years or more than ninety-nine years or life. The jury assessed punishment
at ninety-nine years' imprisonment. We affirm the judgment of the trial court.
            Lowe raises four issues on appeal. Lowe contends that 1) the evidence is insufficient to
corroborate the accomplice witness testimony, 2) he received ineffective assistance of counsel, 3) the
evidence is legally insufficient to support the jury's verdict, and 4) the evidence is factually
insufficient to support the jury's verdict. We conclude there is sufficient evidence which tends to
connect Lowe to the offense to corroborate the accomplice witness testimony. Lowe has not shown
that the performance of his attorney at trial was deficient. The evidence is both legally and factually
sufficient to support the verdict.
            1.         Sufficient Corroboration of Accomplice Statement
            In his first point of error, Lowe contends the testimony of the accomplice, Tracy Thomas, is
insufficiently corroborated by other evidence to sustain the conviction. Lowe argues there is no
evidence that tends to connect him to the crime other than his presence at the scene. 
            Accomplice witness testimony must be corroborated by other evidence which tends to
connect the defendant to the offense. Article 38.14 provides that "[a] conviction cannot be had upon
the testimony of an accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed; and the corroboration is not sufficient if it merely shows the
commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 1979). The Texas
Court of Criminal Appeals has held that corroboration of the accomplice witness testimony is a
statutory requirement imposed by the Legislature and declined to "impose legal and factual
sufficiency standards on a review of accomplice witness testimony under Article 38.14." Cathey v.
State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). The accomplice witness rule only requires that
there is some nonaccomplice evidence which "tends to connect" the accused to the commission of
the offense alleged in the indictment. Hernandez v. State, 939 S.W.2d 173, 176 (Tex. Crim. App.
1997).
            The test for determining the sufficiency of the corroboration is to eliminate the accomplice
testimony from consideration and then determine if there is any other incriminating evidence which
"tends to connect" the defendant with the crime. Id.; Reed v. State, 744 S.W.2d 112, 126 (Tex. Crim.
App. 1988). The nonaccomplice evidence does not need to prove all the elements of the alleged
offense. Hernandez, 939 S.W.2d at 176; Underwood v. State, 967 S.W.2d 925, 928 (Tex.
App.—Beaumont 1998, pet. ref'd). 
            Although Lowe was present at the scene of the crime, his presence alone is not enough to
corroborate the accomplice testimony. Mere presence of a defendant at the scene of the crime is
insufficient to corroborate accomplice testimony. Cox v. State, 830 S.W.2d 609, 611 (Tex. Crim.
App. 1992); Beathard v. State, 767 S.W.2d 423, 428 (Tex. Crim. App. 1989); Howard v. State, 972
S.W.2d 121, 128 (Tex. App.—Austin 1998, no pet.); see Rios v. State, 982 S.W.2d 558 (Tex.
App.—San Antonio 1998, pet. ref'd). However, as the Texas Court of Criminal Appeals asserted
in Brown, "[p]roof that the accused was at or near the scene of the crime at or about the time of its
commission, when coupled with other suspicious circumstances, may tend to connect the accused
to the crime so as to furnish sufficient corroboration to support a conviction." Brown v. State, 672
S.W.2d 487, 489 (Tex. Crim. App. 1984). Even apparently insignificant incriminating circumstances
may sometimes prove to be sufficient corroboration. Munoz v. State, 853 S.W.2d 558, 559 (Tex.
Crim. App. 1993). Cumulative evidence of "suspicious circumstances" can be sufficient evidence
which "tends to connect" a defendant to the alleged offense, even if none of the circumstances would
be sufficient individually.


 
            The State introduced several "suspicious circumstances," which tend to connect Lowe to the
manufacture of methamphetamine. The State introduced evidence that Lowe had paid the rent for
the motel room, knew how to manufacture methamphetamine, knew what compounds were being
used in the motel room, and was in the company of the accomplice at the time of the raid. 
            Although the motel room had been registered under the name Jerry or Larry Lowe, Eric
Tceng, the owner of the motel, testified that Paul Lowe personally paid the rent for the week in
question. Tceng did not register the original renter and did not know if Paul Lowe was the same
individual who originally rented the room. 
            While securing the crime scene and assessing the safety measures needed, Officer Randall
Brooks, a D.E.A. cite-certified safety officer, asked Lowe if there was any sodium or lithium metal
in the motel room. Lowe responded "no," and said that there was no anhydrous ammonia either. 
Officer Brooks testified that he did not ask Lowe whether the bathroom contained anhydrous
ammonia and that his response indicated that he knew how to "cook" methamphetamine including
multiple methods to manufacture methamphetamine. 
            Lowe was also found in the company of the accomplice. Evidence that the defendant was
in the company of the accomplice at or near the time or place of the offense is another corroborating
circumstance. McDuff v. State, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997). When the police
knocked on the door of the motel room, they heard a female voice and observed a red-headed female
peeking out of the window of the motel room. Shortly after the police knocked on the door, Lowe
opened the front door to talk to the officers. The accomplice, Tracy Thomas, was apprehended while
fleeing from the scene. William Casper, an officer with the Lufkin Police Department, testified that
he observed Thomas exit the bathroom window of the motel room in question and attempt to flee
while only partially dressed. Officer Casper testified that it is unusual for a person to exit a
bathroom window and for a female to be outside without wearing a shirt. No other individuals were
found inside the motel room. This evidence establishes that Lowe was in the company of the
accomplice at or near the time of the offense.
            Texas does not require corroborating testimony to directly link the defendant to the crime or
to prove each element of the offense. See Hernandez, 939 S.W.2d at 176; Underwood, 967 S.W.2d
at 928. The cumulative effect of Lowe's presence at the scene and the suspicious circumstances that
Lowe knew how to manufacture methamphetamine, knew the compounds being used in the motel
room, had paid the rent for the motel room, and was found in the company of the accomplice is
sufficient to tend to connect Lowe to the offense.
            2.         Trial Counsel's Assistance Has Not Been Shown To Be Ineffective
            Lowe asserts in his second point of error that his trial counsel was ineffective for failing to
make a closing argument during the punishment phase. The State argued in its closing argument at
punishment that Lowe had been convicted of eight prior felonies and had recently been convicted
of misdemeanor theft. Lowe contends there are several arguments which could have been made. 
Lowe had not committed a felony in the past sixteen years. Lowe's longest sentence was eighteen
years. All of Lowe's prior felonies had been committed before he turned forty, and at the age of fifty-three a lengthy sentence would result in his death before he could be released on parole. Lowe also
contends his attorney could have made a plea for mercy. Despite the existence of possible
arguments, Lowe has failed to prove that his trial attorney's performance was deficient.
            Both the United States and Texas Constitutions confer a right to effective representation by
counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10. If counsel's performance is ineffective,
the conviction cannot stand. The Texas Court of Criminal Appeals has held that the Texas
Constitution does not impose a higher standard than the Sixth Amendment. Jackson v. State, 877
S.W.2d 768, 771 (Tex. Crim. App. 1994); Hernandez v. State, 726 S.W.2d 53, 56–57 (Tex. Crim.
App. 1986). The Sixth Amendment standard, established by Strickland, requires a defendant
alleging ineffective assistance of counsel to show that his or her counsel's performance at trial was
deficient and that counsel's deficient performance prejudiced his or her defense. See Strickland v.
Washington, 466 U.S. 668 (1984); see also Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002). To satisfy the deficiency prong of the test, Martin must prove by a preponderance of the
evidence that his counsel's representation fell below the objective standard of professional norms. 
Bone, 77 S.W.3d at 833. There is a strong presumption that counsel's performance was adequate. 
Id. The reason for this presumption is that counsel at trial is better positioned to judge matters of
strategy than an appellate court reviewing a cold record. An appellate court should not "conclude
the challenged conduct constituted deficient performance unless the conduct was so outrageous that
no competent attorney would have engaged in it." Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim.
App. 2001). 
            Lowe argues that any attorney acting within professional norms would have attempted to
advocate something favorable on behalf of his client. An ineffective assistance of counsel claim
cannot be based on a difference of opinion concerning strategy. Ineffective assistance of counsel
claims "must be firmly founded in the record." Thompson v. State, 9 S.W.3d 808, 813–14 (Tex.
Crim. App. 1999). "If counsel's reasons for his conduct do not appear in the record and there is at
least the possibility that the conduct could have been legitimate trial strategy, we will defer to
counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." Ortiz v.
State, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002); Jackson v. State, 877 S.W.2d 768, 771 (Tex.
Crim. App. 1994). "[T]he defendant must prove, by a preponderance of the evidence, that there is
. . . no plausible professional reason for a specific act or omission." Bone, 77 S.W.3d at 836. 
Waiving the final argument at the punishment phase has been held to be acceptable trial strategy. 
Salinas v. State, 773 S.W.2d 779, 783 (Tex. App.—San Antonio 1989, pet. ref'd); see Ortiz v. State,
866 S.W.2d 312, 315 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (short incoherent final
argument at punishment not ineffective assistance of counsel). It is the trial strategy of some
attorneys to waive final argument in an attempt to cut off the State's rebuttal. Salinas, 773 S.W.2d
at 783. The record does not indicate why trial counsel failed to make a closing argument at
punishment, and the waiver of a closing argument can be valid trial strategy. Lowe has not shown
that no plausible professional reasons exist for his trial counsel's actions. 
            Further, ineffective assistance of counsel claims must be based on the totality of the
circumstances. Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). Although a
defendant is entitled to effective assistance of counsel, the accused is not entitled to errorless or
perfect counsel. Id. When considered in the totality of the circumstances, Lowe has not shown that
his attorney's performance was deficient.
            3.         The Evidence is Legally Sufficient
            Lowe argues that the evidence is legally insufficient to support the jury's verdict of guilty. 
Lowe contends a rational juror could have concluded Lowe simply walked into a bad situation. 
Lowe argues that, based on all the evidence, a rational juror could not have found all the essential
elements beyond a reasonable doubt.
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). 
            A person commits an offense if he knowingly manufactures, delivers, or possesses with intent
to manufacture or deliver a methamphetamine. Tex. Health & Safety Code Ann. §§ 481.102(6),
481.112(a) (Vernon 2003 & Supp. 2004). "Manufacture" is defined as "the production, preparation,
propagation, compounding, conversion, or processing of a controlled substance . . . independently
by means of chemical synthesis . . . ." Tex. Health & Safety Code Ann. §§ 481.002(25) (Vernon
Supp. 2004). There is legally sufficient evidence that would allow a rational juror to find the
essential elements of manufacture of methamphetamine beyond a reasonable doubt.
            When viewed in a light most favorable to the prosecution, a rational juror could have
concluded beyond a reasonable doubt that Lowe knowingly manufactured methamphetamine beyond
a reasonable doubt. Thomas testified that she and Lowe had maufactured the methamphetamine
together. She testified that Lowe was the primary cook and that she just assisted him. 
            As discussed previously, Lowe was present at the scene and demonstrated a knowledge of
the methods used to make methamphetamine and what specific compounds were used. Shortly after
the police knocked on the door, Lowe exited the motel room by the front door to talk to the officers. 
The room also contained a suitcase with Lowe's name on it, Lowe's high school diploma, several
letters addressed to Lowe, and a certificate with Lowe's name on it. Officer Baker testified that,
during the initial investigation of the motel room, the bathroom contained smoke and fumes. The
smoke and fumes indicated that a chemical reaction was still occurring inside the motel room when
the police arrived. The officers found freshly cooked methamphetamine drying in a Pyrex dish on
the bed. While securing the crime scene and assessing the safety measures needed, Officer Randall
Brooks, a D.E.A. cite-certified safety officer, asked Lowe if there were any sodium or lithium metal
in the motel room. Lowe responded "no" and that there was no anhydrous ammonia either. Officer
Brooks testified that he did not ask Lowe whether the bathroom contained anhydrous ammonia and
that his response indicated that he knew how to "cook" methamphetamine including multiple
methods to manufacture methamphetamine. 
            The State established that methamphetamine was found at the scene and that the room
contained materials that could be used in the manufacture of methamphetamine. Kevin Minor, a
chemist with the Texas Department of Public Safety, testified that the samples taken from the motel
tested positive for methamphetamine and exceeded four grams in aggregate weight. The motel room
contained various apparatus which could be used to manufacture methamphetamine. There was a
plastic tube containing ice and water. Electrical cords were running all over the room which were
taped down. The microwave had been sealed with tape to prevent the gases from escaping. In the
bathroom, the police found a methamphetamine reaction vessel consisting of a jug with tubing
running out of it sealed with tape. Police also found containers of Red Devil Lye, a compound with
a red phosphorous color, and other compounds used in the manufacture of methamphetamine. 
            When viewed in a light most favorable to the verdict, legally sufficient evidence exits. The
accomplice testified that Lowe was the primary "cook." Lowe was present at the scene and
demonstrated a knowledge of the specific materials used. Apparatus and compounds which can be
used in the manufacture of methamphetamine were found in the motel room. A rational juror could
have found that all the essential elements of the offense were proved beyond a reasonable doubt.
            4.         The Evidence is Factually Sufficient
            Lowe contends the evidence is factually insufficient. Lowe argues that the evidence is
factually insufficient because he did not flee, that he had arrived shortly before the police, that he
was upset at Thomas for manufacturing methamphetamine, and that the police did not fingerprint
any of the seized evidence. However, the evidence is not too weak to support the jury's finding of
guilt beyond a reasonable doubt, and the contrary evidence is not strong enough that the State could
not have met its burden of proof.
            When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, No. 539-02,
slip op. at 8, 2004 Tex. Crim. App. LEXIS 668, *20 (Tex. Crim. App. Apr. 21, 2004). There are
two ways in which we may find the evidence to be factually insufficient. First, if the evidence
supporting the verdict, considered alone, is too weak to support the jury's finding of guilt beyond a
reasonable doubt, then we must find the evidence insufficient. Id. Second, if—when we weigh the
evidence supporting and contravening the conviction—we conclude the contrary evidence is strong
enough that the State could not have met its burden of proof, we must find the evidence insufficient. 
Id. "Stated another way, evidence supporting guilt can 'outweigh' the contrary proof and still be
factually insufficient under a beyond-a-reasonable-doubt standard." Id. If the evidence is factually
insufficient, then we must reverse the judgment and remand for a new trial. Clewis v. State, 922
S.W.2d 126, 135 (Tex. Crim. App. 1996).
            Lowe contends he was simply in the wrong place at the wrong time. Travis Roberts testified
that he visited the motel room in question twice that day. According to Roberts, Eric Kent and
Thomas were cooking methamphetamine during the first visit. The first visit lasted around twenty
minutes, sometime between one o'clock and three o'clock in the afternoon. Roberts testified that his
second visit occurred around five o'clock that afternoon to get a flask. According to Roberts, Lowe
arrived while Kent was cleaning the flask. Roberts testified that Lowe was upset that Thomas and
Kent had been "cooking" methamphetamine, and Roberts left shortly after Lowe arrived. The police
arrived shortly after Roberts left the motel room. 
            Lowe argues that Thomas, an admitted drug addict, had confused him with Kent in her
statement to the police. Lowe wrote Thomas a letter in which he stated that she had confused him
and Kent in her statement. Thomas wrote a letter to Lowe in which she stated that Lowe was "in the
wrong place at the wrong time." The State argues that Lowe was attempting to get Thomas to
change her testimony and stated in his letter "I got there after 5:00 fell asleep on the bed and woke
up to the police knocking on the door. If you get this over, I walk. O.K.?"
            Thomas testified that Kent was at the apartment that day but left before the police arrived. 
According to Thomas, Kent only watched them cook the methamphetamine but did aid in the drying
process. She testified that Roberts was not in the room when they cooked the methamphetamine. 
Thomas claims that Roberts came before starting the cook and then came afterwards to borrow a
flask. According to Thomas, Roberts left a few minutes before the police arrived. Thomas was an
admitted drug user and was required as a condition of her community supervision to testify against
him. As discussed previously, Thomas testified that Lowe participated in the synthesis of the
methamphetamine. Further, Lowe was found at the scene and demonstrated knowledge of the
compounds being used.
            When viewed in a neutral light, the evidence is factually sufficient. The credibility of the
witnesses is within the province of the jury. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App.
1996). The jury was entitled to believe Thomas' testimony at trial over Roberts'. The evidence
supporting the verdict, considered alone, is not too weak to support the jury's finding of guilt beyond
a reasonable doubt. After weighing the evidence supporting and contravening the conviction, we
conclude the contrary evidence is not strong enough that the State could not have met its burden of
proof. 
            Lowe's conviction for manufacture of methamphetamine is supported by legally and factually
sufficient evidence. Lowe has not demonstrated that he received ineffective assistance of counsel,
and the accomplice witness testimony was sufficiently corroborated. 
            We affirm the judgment of the trial court.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          May 24, 2004
Date Decided:             July 23, 2004

Do Not Publish