

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00034-CR

WILLIE RUDD, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 10-0450X

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

Convicted by a jury of the burglary of a habitation and sentenced to seventy-five years' imprisonment and to pay a $10,000.00 fine, Willie Rudd, Jr., has filed his appeal. Rudd argues that the jury's verdict can only support a conviction for a second degree offense (in contrast with the first degree felony punishment that he alleges that he "incorrectly received") and that the trial court erred in failing to suppress the results of a comparative DNA test.[1] We find that the jury charge establishes that Rudd was convicted of a first degree felony and conclude that Rudd has not preserved his last point of error. We affirm the trial court's judgment.

## I. Factual Background

In the very early morning of June 25, 2010, Fred Weathersby, III, was awakened by the sound of his dogs' barking, and then he heard them "yelping, like someone was kicking them." Weathersby soon heard "a real bad boom," as the front door "was forced open." Weathersby grabbed his pistol just as his bedroom door was kicked and "went flying open," whereupon he "started firing" as the intruder was "trying to find the light switch." There was "some kind of movement" and "rumbling" "going on," and the intruder fired two bullets into the mattress where Weatherby had just been reposing. The intruder, then still just outside the bedroom, yelled out, "Man, what's going on? What's going on?" Weathersby testified that the intruder then shot toward him "three times over [his] head," prompting Weathersby to return fire once again. Weathersby testified that he had shot seventeen bullets from his 40-caliber semi-automatic pistol. During the exchange of gunfire, Weathersby heard the intruder exclaim, "I'm

---

[1]The thousands of genes that make up each chromosome of living beings are composed of deoxyribonucleic acid (DNA). The arrangement of DNA is unique to each living thing.

hit." Weathersby did not hear further from the intruder but reloaded his pistol. Afraid the intruder might still be in the house somewhere or lying in wait for him, Weathersby removed the air-conditioner unit from his bedroom window and crawled out. He then called relatives and the emergency 9-1-1 number on his cell phone.

The intruder had disappeared by the time officers arrived at the scene. Harrison County Sheriff's Department Investigator Cindy Dowler Black testified that the sheriff's department dispatcher "alerted the hospitals around" concerning the situation and received a telephone call from "Willis Knighton [hospital] in Shreveport that there was a gunshot victim there." Black arrived at the hospital, saw Rudd, and gathered his bloody hospital gown. Rudd's gown was sent to the Tarrant County Medical Examiner's Office for testing along with a "swab taken from blood on the floor of the bedroom of the residence." Forensic DNA scientist, Carolyn Vanwinkle, testified that "the [DNA] profiles from the stain from the bedroom was [sic] the same as the stain from the [hospital] gown" worn by Rudd when being treated for gunshot wounds at the Shreveport hospital.

## II.     The Jury Convicted Rudd of a First Degree Felony

Burglary of a habitation is a second degree offense unless the defendant entered the habitation with intent to commit a felony other than theft. TEX. PENAL CODE ANN. § 30.02(c), (d) (West 2011). Count I, Paragraph A of the State's indictment alleged that Rudd "intentionally or knowingly enter[ed] a habitation, without the effective consent of Fred Weathersby, the owner thereof, and attempted to commit or committed the felony offense of Aggravated Assault." Count I, Paragraph B alleged that Rudd entered the habitation without Weathersby's consent

"with intent to commit the felony offense of aggravated assault." Assault is classified as a misdemeanor offense unless the act involves circumstances not present in this case. TEX. PENAL CODE ANN. § 22.01(b), (c) (West 2011). Aggravated assault is a felony offense. TEX. PENAL CODE ANN. § 22.02(b) (West 2011). Because both paragraphs of the State's indictment alleged either that Rudd entered with the intent to commit aggravated assault, or did actually attempt to commit or committed an aggravated assault, the State's indictment alleged that Rudd committed a first degree felony offense.[2]

Rudd admits that "[t]he punishment charge included a first degree felony punishment range and Rudd was convicted of a first degree felony." Rudd, however, complains that "[t]he problem comes with the guilt/innocence charge" because the charge contained an instruction that a person commits burglary if "he enters a habitation and commits or attempts to commit an assault." Rudd argues that "the jury's finding of simple assault falls short of the felony finding required to support a first degree felony conviction." In an attempt to secure a de novo review of his point of error, Rudd classifies the error in the instruction as an error that produced a void or illegal sentence. In contrast with Rudd, the State takes the position that because Rudd was both charged with and convicted of a first degree felony and since the punishment charge correctly described the range of penalty which would comport with a first degree felony, then the nature of the issue raised by Rudd would constitute a complaint that there was error in the jury charge.

Our review of alleged jury charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim.

---

[2]The jury found Rudd guilty "as charged in the indictment."

App. 2009); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Initially we determine whether an error occurred and then "determine whether sufficient harm resulted from the error to require reversal." *Abdnor*, 871 S.W.2d at 731–32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), *reaff'd by Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

The level of harm an appellant must demonstrate as having resulted from the erroneous jury instruction depends on whether the appellant properly objected to the error. *Abdnor*, 871 S.W.2d at 732. When the defendant fails to object to the charge, we will not reverse for jury-charge error unless the record shows "egregious harm" to the defendant. *Ngo*, 175 S.W.3d at 743–44 (citing *Almanza*, 686 S.W.2d at 171); *see also Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004). In determining whether the error caused egregious harm, we must decide whether the error created such harm that the appellant did not have a fair and impartial trial. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Almanza*, 686 S.W.2d at 171; *Boones v. State*, 170 S.W.3d 653, 659 (Tex. App.—Texarkana 2005, no pet.).

The jury charge read as follows:

> A person commits the offense of burglary if, without the effective consent of the owner, he enters a habitation and commits or attempts to commit an assault, or without the effective consent of the owner, he enters a habitation with intent to commit an assault.
>
> . . . .
>
> A person commits assault if the person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse.

5

A person commits aggravated assault if the person commits an assault, as defined above, and causes serious bodily injury to another, including the person's spouse.

. . . .

"Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

. . . .

Now, if you find from the evidence beyond a reasonable doubt that on or about the 25th day of June, 2010, in Harrison County, Texas, the defendant, Willie James Rudd, Jr., did, without the effective consent of Fred Weathersby, the owner thereof, enter a habitation and commit or attempt to commit aggravated assault, or, that he did then and there, with intent to commit the felony offense of aggravated assault, enter a habitation without the effective consent of Fred Weathersby, the owner thereof, then you will find the defendant guilty of the offense of burglary of a habitation as charged in the indictment.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."[3]

"The abstract or definitional portions of a jury charge are designed to help the jury understand the meaning of concepts and terms used in the charge's application portions." *Martin v. State*, 252 S.W.3d 809, 814 (Tex. App.—Texarkana 2008, pet. dism'd) (citing *Caldwell v. State*, 971 S.W.2d 663, 667 (Tex. App.—Dallas 1998, pet. ref'd). A jury is only "authorized to convict based on the application portion of a charge; an abstract charge or a legal theory does not bring that theory before the jury unless the theory is applied to the facts." *Id.* (citing *McFarland v. State*, 928 S.W.2d 482, 515 (Tex. Crim. App. 1996), *overruled on other grounds*, *Mosley v.*

---

[3]The court's charge failed to instruct the jury that a person commits assault if he intentionally or knowingly threatens another with imminent bodily injury. TEX. PENAL CODE ANN. § 22.01(a)(2) (West 2011). It also did not include that a person commits aggravated assault if he uses or exhibits a deadly weapon during the commission of an assault. TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011). There is no complaint about the court's omission of these instructions. There is also no complaint regarding the legal sufficiency of the evidence.

*State*, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998); *Campbell v. State*, 910 S.W.2d 475, 477 (Tex. Crim. App. 1995)).

"A charge is adequate if it contains an application paragraph that authorizes a conviction under conditions specified by other paragraphs of the charge to which the application paragraph necessarily and unambiguously refers . . . ." *Id.* (citing *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)). "If the application paragraph of a jury charge does not incorporate a theory recited only in the abstract portion of the charge, a jury cannot convict on that theory." *Id.* (citing *Hughes v. State*, 897 S.W.2d 285, 297 (Tex. Crim. App. 1994); *Mallard v. State*, 162 S.W.3d 325, 334 (Tex. App.—Fort Worth 2005, pet. ref'd)). Here, the trial court's charge first informed the jury that "[a] person commits the offense of burglary" of a habitation if he enters the habitation "and commits or attempts to commit an assault, or . . . with intent to commit an assault" and defined the term assault. However, the charge did not stop with that definition; it also defined aggravated assault, and the application portion of the charge limited the jury's ability to find Rudd guilty by first requiring a finding related to aggravated assault.[4] We have previously held that even where the "abstract portion of the charge is questionable," there is no jury charge error when "the application portion essentially tracks the indictment." *Id.* at 815.

Further, because there was no objection to the jury charge below, Rudd was required to show that any harm suffered by him due to an error in the charge was egregious. In *Martin*, we also found that "[e]ven if there were error, there was no harm" because "[a]n erroneous

---

[4]There was no submission of a lesser-included offense based on the idea that Rudd only committed simple assault.

7

definitional section of a jury charge can be 'saved' by a proper application section." *Id.* Here, because the jury was only authorized to convict Rudd on the application paragraph, Rudd cannot demonstrate, as he argues, that "the burglary instruction submitted . . . supported only a second degree felony conviction." "Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *see Grady v. State*, 614 S.W.2d 830, 831 (Tex. Crim. App. [Panel Op.] 1981).

We overrule Rudd's first point of error.

Rudd's second point of error, claiming that he incorrectly received a first degree punishment, is reliant upon the success of his argument raised in his first point of error: that he was "found guilty of . . . a second degree felony." Because we have already concluded that Rudd was convicted of a first degree felony, as alleged in the indictment and as set forth in the court's application paragraph of the jury charge, that determination effectively also renders the second point of error to have no basis. Therefore, we overrule Rudd's second point of error.

## III.     Rudd Failed to Introduce the Warrant into the Record

In addition to the bloody gown worn by Rudd, there was testimony that an oral swab was taken from him at the hospital. When Black was asked whether Rudd consented to the buccal swab, Rudd's counsel objected that "[w]hether he consented -- whether it was done by a warrant has no relevance to this proceeding. The fact that they got it obtained from a warrant is not being contested in this trial."

Outside of the presence of the jury, the following exchange occurred:

> [COUNSEL FOR RUDD]: . . . . Judge, we would object to the introduction into evidence of the buccal swab that was taken from Mr. Rudd. Apparently, on October 25th, 2010, it was done pursuant to a search warrant.
> We object. The search warrant didn't contain probable cause, and I believe that the Court can determine that from the four corners of the document.

> THE COURT: I haven't seen the document, so . . .

> [STATE]: Judge, for purposes of the record, this warrant was executed by a sitting district Judge. It's an evidentiary warrant. There is a proper return.

> THE COURT: Based on the four corners of the document, I will find that the evidence was sufficient.

> [STATE]: Thank you, Judge.

> [COUNSEL FOR RUDD]: Just so the record's clear, you are overruling my objection, right, Judge?

> THE COURT: I'm overruling -- I'm overruling your objection.

During Black's direct-examination, the State attempted to offer the warrant into evidence, but Rudd's counsel objected to its introduction, as shown in this exchange:

> Q [STATE] Now, I previously marked this as State's Exhibit No. 14,[5] Investigator.

> [COUNSEL FOR RUDD]: Subject to the same -- to the Court's previous ruling.

> THE COURT: It's introduced.
> Or did you offer it or --

> [STATE]: I had not offered it as of yet, Your Honor.

---

[5]The exhibit index refers to this as the "Search warrant for DNA (not offered)."

Q  [STATE] I'm handing this to you.  Can you see if you can identify what that document is without saying what it is?

[COUNSEL FOR RUDD]:  Judge, can we approach?

(At the bench, on the record.)

[COUNSEL FOR RUDD]:  To introduce evidence, the fact there was a search warrant, they cannot introduce that into evidence.  Probable cause is not an issue now before this jury as to that search warrant.

[STATE]:  Are you not going to argue about the warrant was improperly done?

[COUNSEL FOR RUDD]:  I made my objection to say warrant.  I am not going anywhere into warrant.  She took samples from it.  She already said that we don't need to go there.

[STATE]:  I understand, Judge.  It is a government document, exception to hearsay.

[COUNSEL FOR RUDD]:  He has ruled on the warrant.

[STATE]:  I understand that.  But he has not ruled on yours yet.

[COUNSEL FOR RUDD]:  On my what?

[STATE]:  He has not ruled on whether or not it comes into evidence.

[COUNSEL FOR RUDD]:  I will say same objections that are subject to the Court's previous ruling.  It is admissible because it is -- the warrant is valid for probable cause.

[STATE]:  Okay.

(End of bench conference.)

The warrant was not introduced into evidence.

In his last point of error, Rudd argues that the "trial court should have granted Rudd's motion to suppress buccal swabs, used to perform comparative DNA tests, because the search warrant and supporting affidavit are not in the appellate record." Rudd argues that we should review whether the admission of the buccal swab by the trial court was error. Rudd further maintains that we should conclude that error resulted because no search warrant was admitted into evidence and, therefore, is not included in our appellate record. In doing so, Rudd cites the general rule that it is the State's burden to either present a search warrant or provide an exception to the requirement that a warrant be obtained. However, the record demonstrates that the court *was* presented with the search warrant in this case. In fact, the State attempted to introduce the warrant, but Rudd's counsel objected to its introduction and, as a result of that objection, the warrant was never admitted.

The State contends that counsel's actions amounted to invited error. An appellant cannot make "'an appellate error of an action [he] induced.'" *Vennus v. State*, 282 S.W.3d 70, 74 (Tex. Crim. App. 2009) (finding invited error where defense prevented State from fully presenting evidence of probable cause by objecting during suppression hearing) (quoting *Druery v. State*, 225 S.W.3d 491, 505–06 (Tex. Crim. App. 2007)).

"Once the State shows that a valid search warrant is in existence at the time of the search the burden of going forward is then on a defendant to prove that the affidavit is insufficient as a matter of law and to see that the search warrant and the affidavit[6] are included in the record on appeal." *Ortega v. State*, 464 S.W.2d 876, 877 (Tex. Crim. App. 1971); *see Underwood v. State*,

---

[6]There was no complaint about the supporting affidavit, assuming there was one, at trial.

11

967 S.W.2d 925, 927–28 (Tex. App.—Beaumont 1998, pet. ref'd); *Davidson v. State*, 249 S.W.3d 709, 717–18 (Tex. App.—Austin 2008, pet. ref'd) (it is defendant's burden to establish warrant's invalidity). Because the search warrant was neither introduced into evidence nor presented in a bill of review, Rudd's complaint that the trial court erred in overruling his objection to the evidence of the buccal swab is not properly presented for our review. *See Bogany v. State*, Nos. 14-10-00138-CR, 14-10-00139-CR, 14-10-00140-CR, 14-10-00141-CR, 14-10-00142-CR, 14-10-00143-CR, 14-10-00145-CR, 14-10-00146-CR, 2011 WL 704359, at *1 (Tex. App.—Houston [14th Dist.] Mar. 1, 2011, pet. ref'd) (mem. op., not designated for publication) (per curiam).[7]

We overrule Rudd's last point of error.[8]

## IV.    Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:      October 25, 2013
Date Decided:        October 28, 2013

Do Not Publish

---

[7]Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

[8]We also note that no harm can be shown given the independent DNA evidence from the hospital gown linking Rudd to the crime scene.